[Civ. No. 11729.   First Dist., Div. One.—May 26, 1941.]

EDGAR J. TULLEY, Petitioner, v. THE SUPERIOR COURT OF ALAMEDA COUNTY et al., Respondents.

G. C. Ringole for Petitioner.

Myron Harris for Respondents.

PETERS, P. J.—Petition for a writ of prohibition.

The question presented is whether, as a matter of public policy, and independent of statute, a nonresident officer of the armed forces of United States who is temporarily in this state on official business is exempt from process in a civil action brought by his divorced wife to recover from the officer money alleged to be due under a written contract for the support of the minor child of the parties.

The petition sets forth the following facts: Petitioner is the defendant in an action in Alameda County brought by his divorced wife to recover the sum of $4,800, the alleged balance due on a contract entered into in 1927 between the plaintiff and defendant by which defendant agreed to pay plaintiff $100 a month for the support of a child of the marriage, now eighteen years of age. Petitioner is a lieutenant colonel in the army, and, since divorcing the plaintiff, has remarried. It appears from the affidavits introduced by him on his motion in the court below to quash service of summons, and attached as exhibits to the present petition, that in 1931 the Judge Advocate of the United States Army rendered an opinion that the above-mentioned contract was not a binding contract, and that petitioner should be required to contribute nothing for the support of his wife, and should pay only such amounts as are reasonably necessary for the support of the child. According to the affidavit, the Judge Advocate General returned the matter to the Corps Area Commander, Eighth Corps Area, to fix the amount affiant should pay. The amount was set at $50 a month, which petitioner at all times has paid in full. In addition, the petitioner has paid certain sums for the medical care of the child. The Alameda County action was brought to recover the difference between the amount paid and what plaintiff claims is due under the contract. Petitioner claims in this proceeding that he was not amenable to process at the time he was served with summons. Of course, in this proceeding, we are not concerned with the merits of the controversy, nor can we properly consider the legal effect of the Judge Advocate's decision on the provisions of the contract. Those are matters

which can properly be considered only on the trial on its merits.

It appears from a copy of orders of the War Department that on January 26, 1940, petitioner, who is a resident of Pennsylvania, and who has been in the army since 1914, was relieved of his assignment at Fort Crook, Nebraska, effective at such time as would enable him to comply with the further provision of the order that he sail from San Francisco on an army transport April 27, 1940, to report for duty in the Philippines. Thereafter, by order of the authorities in Nebraska, he was granted a leave of absence for one month and ten days "effective on or about 12 March, 1940". The petitioner was served in the Alameda County action on April 24 or 25, 1940. One month and ten days from March 12th would have expired prior to April 24th or 25th, the day he was served. This is perhaps the basis of the averment in his affidavit, Exhibit "E", that affiant was in the performance of his official duties at Fort Mason, San Francisco, when a copy of the complaint and summons were served upon him. He further states that he arrived at Fort Mason on April 22, 1940, and that after his arrival he had his quarters and slept at Fort Mason. He arrived in California on April 1, 1940, and spent some time at Oceanside before coming to Fort Mason. In the affidavit of the plaintiff it is averred, and not denied by petitioner, that he was served at Hostess House at Fort Mason, which is used for guests and visitors, and not entirely for military purposes.

There is one other fact necessary to mention. Attached to the points and authorities accompanying the petition is a copy of a proclamation of the President of United States, dated September 8, 1939, which recites that in view of the world war conditions "a national emergency exists in connection with and to the extent necessary for the proper observance, safeguarding and enforcing of the neutrality of the United States and the strengthening of our national defense within the limits of peace-time authorizations".

It is the contention of petitioner that, as a matter of public policy, members of the armed forces of the United States during the present emergency should not be subject to civil process in a state where they are not residents while they are temporarily within such state in the service of their country. The contention is that the courts of this state have

no jurisdiction over such persons in a civil action. If it be assumed that the question can properly be raised by prohibition (*Hammons* v. *Superior Court,* 63 Cal. App. 700 [219 Pac. 1037]), we are of the view that the public policy involved is not so clear and positive that, as a matter of law, it requires that every nonresident member of the armed forces be completely immune from all civil process while temporarily within this state.

It is conceded that if the claimed exemption exists, it exists solely as a matter of public policy. (See annotation in 85 A. L. R. 1340.) Both parties rely upon the case of *Murrey* v. *Murrey,* 216 Cal. 707 [16 Pac. (2d) 741, 85 A. L. R. 1335].) That case held that a nonresident reserve officer of the United States, while in this state for training purposes, at his own request and during peace-time, was amenable to the civil process of this state. The court traced the history and background of the doctrine that certain nonresidents, as a matter of public policy, are immune from process, but held that that doctrine should not be extended to include members of the armed forces during peace-time. The court pointed out that under the common law the privilege of exemption from process extended only to parties to judicial proceedings, their witnesses, and members of the court, whose presence was necessary to the proper carrying out of the judicial functions. The court stated (p. 710) :

"This exemption from service of process is, of course, in derogation of the right which every creditor has to collect his debt by subjecting his debtor to suit in any jurisdiction where he may find him. Since this is so, the privilege should not be extended beyond the reason of the rule upon which it is founded. (*Fitzhugh* v. *Reid,* 252 Fed. 234.) California, as a matter of public policy, recognizes this 'judicial' exemption. (*Hammons* v. *Superior Court,* 63 Cal. App. 700 [219 Pac. 1037].) "

The court recognized the fact that in recent years the privilege has, in some instances, been extended to nonresidents within the jurisdiction engaged in the performance of a public duty during times of emergency. (50 Cor. Jur. 557, sec. 246.) The court discussed at length the leading case on that subject—*Filer* v. *M'Cornick,* 260 Fed. 309. In that case the person claiming the exemption was the president of a Utah bank. During 1918 the federal government was ac-

tively engaged in selling its securities for the purpose of raising funds for the carrying on of the war in which this country was then engaged. A conference of leading bankers of the western states was called by the Governor of the Federal Reserve Bank of this district in San Francisco, for the purpose of discussing ways and means of speeding up the sale of the government securities. While in this state for that purpose the president of the Utah bank was served with process in a civil action. The federal court held that while present in this state to perform such a public duty in the then emergency the Utah resident, as a matter of public policy, was immune from service of civil process.

The Supreme Court in the Murrey case, *supra,* held that the doctrine of the Filer case, *supra,* did not apply to a nonresident reserve army officer training in this state during peace-time. In so holding the Supreme Court stated (p. 712):

"Defendant contends that the theory of the Filer case, *supra,* applies in the instant case. He contends that he was in this state solely for the purpose of performing a public duty and that, therefore, on grounds of public policy, he should be held to be exempt from service. As a matter of public policy, it is undoubtedly true that during a time of war or other national emergency, the exemption discussed in the Filer case, *supra,* would be extended to those in the military service. . . .

"It is conceivable, of course, that a rule that applies during a period of great national emergency might not be applicable to a situation where no such emergency exists. No case seems to have been decided by the courts of this state on the question presented. The few authorities from other jurisdictions are in hopeless conflict. Some jurisdictions have statutes conferring the exemption. In some states the statutes provide that one engaged in military service shall be exempt from arrest. In these jurisdictions some courts hold that the exemption should be extended, as a matter of public policy, to civil process. (*Land Title & Trust Co.* v. *Rambo,* 174 Pa. 566 [34 Atl. 207].) Other jurisdictions refuse to extend the exemption beyond the terms of the statute. (*Hart & Foster* v. *Flynn's Exr.,* 38 Ky. (8 Dana) 190; *Kirkpatrick* v. *Irby,* 3 McCord (S. C.), 205.) Iowa apparently holds that the exemption from civil process exists independently of stat-

ute. (*Northwestern Cas. & Surety Co.* v. *Conaway,* 210 Iowa, 126 [230 N. W. 548].)''

Petitioner relies on the language of the Murrey case that ''it is undoubtedly true that during a time of war or other national emergency, the exemption discussed in the Filer case, *supra,* would be extended to those in the military service.'' He contends that, although this country is officially at peace, under the President's proclamation above-mentioned, and, considering the realities of the present world conditions, a national emergency comparable to war exists, and the above-quoted doctrine applies. We agree that a national emergency now exists, and that the rule that should be applied to this case is the same that should be applied during a period of war. We also agree that for the purposes of this case the record shows that when petitioner was served on April 24 or 25, 1940, his leave of absence had expired, and he was in this state on that date not on a mere vacation, but was here on official business. Nevertheless, we do not agree that in this case principles of public policy are so strong and clear that all creditors are to be prohibited, as a matter of law, from suing all nonresident members of the armed forces in this state during the period of the emergency. While it is true that there is *dictum* in the Murrey case, *supra,* supporting petitioner's position, that *dictum* was based on the theory that such relief should be granted if by statute or otherwise some other adequate remedy did not exist. The courts should only act where the legislature has not acted in the matter. The federal government, both in the last war and in the present emergency, has recognized that those in the armed forces should be entitled to some protection from suit while they are in the service of their country. Under a statute of 1918 (U. S. Stats. at Large, vol. 40, part 1, p. 440), the Congress conferred upon those engaged in military service during the last war certain limited rights in relation to service of process and in relation to certain types of action. But, even in the last war, the federal Congress did not consider it necessary in the public interest to confer the unlimited right to be free from civil process claimed by petitioner in the present proceeding. Certain limited rights were then conferred on those in military service. In the present emergency, effective as of October 17, 1940, the Congress passed the Soldiers' and Sailors' Civil Relief Act of

1940. (Title 50 App., sec. 510, et seq., February 1941 Supplement to United States Code Annotated.) By its express terms that act is made applicable to every court, federal or state. By that act it is required that whenever a *default* judgment is sought against a person in the military service, the court must appoint an attorney to protect such person's interests and may require the plaintiff to post a bond; that if a judgment is secured against a person in military service it may be set aside by such person within ninety days of the termination of such service provided the defendant can show he has a meritorious defense. Another section of the act provides that the court, including any state court, in which an action involving a person in military service is pending, may, and in certain cases must, grant a continuance, during the period of such service and for sixty days thereafter. Other sections provide stays of execution, for the vacating of attachments, and for tolling the statute of limitation during periods of military service. The balance of the act deals with certain specified types of action of which the one here involved is not one. That statute contains the solemn declaration of the Congress of United States as to what it believes public policy requires. The Congress has not deemed it necessary, in the public interest, to grant those in military service an absolute exemption from civil process. Certainly, if the Congress has considered the problem, and has determined that the public interest does not require that an absolute freedom from civil process be conferred on those in military service, this court should not, and cannot, determine that public policy requires such an extreme protection. Whatever might be the rule in a situation where the legislature, the policy making organ of government, has not spoken, when that body has spoken, it is not for the courts, by judicial mandate, to limit or expand the policy thus adopted.

While it is true that the above-mentioned federal statute was passed subsequent to the commencement of the action in which petitioner is a defendant, it is an announcement of policy by the lawmaking body that normally should be the exclusive judge of policy, as to what it considers reasonable and necessary under such circumstances. Under that statute, or independent of that statute, the trial courts possess ample powers to protect the rights of those in the military

service of United States. It is inconceivable that, in a proper case, the trial court, upon a proper showing, would not grant a reasonable continuance to one engaged in military service to permit him to properly prepare his defense, and, if necessary, continue such case during the period of the defendant's foreign service. If the trial court should abuse its discretion in such a case there exist ample remedies to control such abuse. But that is not this case. Petitioner is seeking prohibition, which can only be granted if defendant, as a matter of law, is entirely free from service of civil process. Such a drastic limitation on plaintiff's rights should not be allowed except where compelling reasons of public policy exist. Inasmuch as trial courts, either under the federal statute, or independently thereof, possess the power to amply protect those in the armed forces during the present emergency, no compelling reason exists for extending the rights of defendants in this regard.

The alternative writ is discharged and the peremptory writ of prohibition is denied.

Knight, J., and Ward, J., concurred.