[Civ. No. 12406.   First Dist., Div. One.   June 26, 1943.]

GUY JOHNSON, Respondent, v. ALLAN JOHNSON, Appellant.

Hoge, Pelton & Gunther, Mannon & Brazier and A. Dal Thomson for Appellant.

Redman, Alexander & Bacon, Bronson, Bronson & McKinnon, Betts & Garrison, Borton, Petrini, Conron & Borton,

Crider, Runkle & Tilson, Gerald M. Desmond, Hagar, Crosby & Crosby, Chester O. Hansen, McFadzean & Crowe, Monroe & McInnis and Swing & Swing as Amici Curiae on behalf of Appellant.

Burke & Rawles for Respondent.

PETERS, P. J.—Defendant appeals from a judgment based on a jury verdict awarding plaintiff $3,000 general damages and $600 special damages, as compensation for injuries received by plaintiff when his car collided with that of defendant. The parties are not related although both possess the same last name.

The accident occurred at about 1:30 a.m. on the morning of October 26, 1941. Plaintiff was driving his car north, and defendant was driving his car south on a state highway south of Fort Bragg. The accident happened on the east side of the highway—in other words, defendant was on the wrong side of the highway at the point of impact. The evidence amply supports the inference that defendant's car was traveling at a high rate of speed. The force of the impact tore the motor from defendant's car and caused it to be thrown a distance of fifty-eight feet. Defendant's car traveled some sixty-seven feet after the collision. Defendant admitted in his deposition that he had had five glasses of beer and four whiskey highballs preceding the accident, and testified that he could not remember anything that happened immediately before, at, or after the accident. In a signed statement given to a deputy district attorney the day after the accident he admitted having more drinks before the accident than he later testified to in his deposition.

Defendant concedes that the evidence supports the implied finding of the jury that he was guilty of negligence proximately contributing to the accident, but urges that, as a matter of law, plaintiff was guilty of contributory negligence. This contention is based on the following facts: South of the point of collision was a sharp turn in the highway. North of the place of impact was the crest of a hill. Between the turn and the crest of the hill was a straightaway of over 500 feet. According to the evidence plaintiff had been following closely behind one Snyder who was driving a Ford. Plaintiff followed Snyder around the sharp turn above mentioned and, on reaching the straightaway, passed him. The collision took

place immediately after plaintiff had passed the Ford and after he had cut back to and had reached his side of the highway. Defendant's theory is that on coming over the crest of the hill he was suddenly confronted with the headlights of two cars; that, confronted with this emergency, he applied the brakes and skidded over onto the wrong side of the highway; that plaintiff was negligent in thus passing the Snyder car so close to the crest of the hill; and that such contributory negligence, as a matter of law, proximately contributed to the accident. There is no merit to this contention. Even if it be assumed that the jury could have found that plaintiff was guilty of contributory negligence, the evidence does not compel that conclusion, nor does it compel the conclusion that the negligence, if any, of plaintiff proximately contributed to the accident. The evidence amply supports the inferences that as defendant came over the crest of the hill at a high rate of speed he lost control of his car; that this was due to the liquor he had consumed; and that the plaintiff's act in passing the Ford had nothing to do with the accident. Under such circumstances the jury's findings cannot be disturbed by an appellate court.

Defendant also contends that the trial court was guilty of prejudicial error in failing to give two instructions requested by him. The first of these was on the doctrine of contributory negligence, and stated that the negligence of plaintiff "however slight" bars a recovery if it proximately contributed to the accident. The court did instruct that if plaintiff was "negligent in any particular at the time and place and under the circumstances" and such negligence proximately contributed to the accident, he could not recover. The instruction given adequately covered the field of the requested instruction. (*Burke* v. *John E. Marshall, Inc.,* 42 Cal.App.2d 195 [108 P.2d 738].)

The second refused instruction was to the general effect that if defendant was free from negligence up to the moment when a collision was apparent, and he then quickly applied his brakes in an attempt to stop and avoid the collision, the sudden application of the brakes was not negligence. The court fully and fairly instructed on the doctrine of imminent peril. It was not error to refuse to give this repetitious instruction.

The main point urged on this appeal is that the trial

court abused its discretion in refusing to grant a stay or continuance of the trial because of defendant's inability to attend by reason of his enlistment in the United States Navy. On this issue the evidence shows the following:

On December 12, 1941, the court set the cause for trial on January 26, 1942. On December 18, 1941, the deposition of the defendant was taken. On January 16th, 23rd and 26th, 1942, motions were made on behalf of defendant requesting that the trial be stayed until after the end of the war. The original motion of January 16th was also for a limited continuance of the trial, with no specific time requested and with no showing made as to whether defendant would be available short of the end of the war. The original motion was supported by the affidavits of one of defendant's attorneys and of defendant's mother. On information and belief they averred that defendant had enlisted in the Navy. At the hearing of this motion evidence was taken. It was then disclosed that defendant's deposition had been taken on December 18, 1941, and that plaintiff's deposition had been taken on January 14, 1942. Plaintiff's attorney also disclosed in detail what he expected to prove at the trial. He stated that he intended to offer the signed statement of the defendant given to the deputy district attorney in which defendant admitted that he had been drinking, and also intended to offer the deposition of the defendant. An examination of this deposition shows that at that time defendant was fully interrogated by plaintiff's and his own counsel concerning this statement, and that he pointed out in detail where he thought the statement was in error.

It was also disclosed at the hearing on the 16th that defendant was insured against liability for accidents growing out of the use and operation of his motor vehicle, and that the insurance company had undertaken the defense of the action. At this time plaintiff's counsel offered to stipulate, if counsel for defendant would state the substance of defendant's testimony, that defendant would so testify if called. The trial court denied the motion for a stay based upon the sole ground of military service on the ground that there was no proper showing that defendant was in fact in military service, and no evidence to establish that he would be unable to attend the trial. In view of the insufficient factual recitations in the affidavits then before the court, this ruling was

correct, and no serious objection is made thereto. The motion for a limited continuance was not then passed upon.

On January 23, 1942, defendant's formal motion for a stay until the termination of the war based upon defendant's military service came on for hearing. The motion for a limited continuance was not renewed at this hearing. In addition to the prior affidavits, another of defendant's counsel submitted an affidavit in which it as averred that on January 21, 1942, the affiant interviewed the defendant in San Francisco; that defendant was then on guard duty on the San Francisco waterfront; that affiant also interviewed Commander Cochran who informed affiant that it would be impossible to relieve defendant from guard duty on January 26th. There was also introduced the affidavit of defendant. In this affidavit it is averred that affiant enlisted in the Navy on January 10, 1942; that he is stationed in San Francisco; and "that by reason of the foregoing, it will be impossible for him to attend the trial of the above entitled case, and he prays that the above entitled matter may be continued until such time as he is released from the Navy." Counsel for plaintiff introduced testimony that Commander Cochran had not refused to permit defendant to be produced as a witness but had suggested defendant's deposition be taken, for which he would consent to defendant taking time off; that defendant was normally off duty twelve hours at a time. The court denied the motion because, in its opinion, defendant's representation by the insurance company was adequate to protect his rights, and because "there is no showing here that he cannot attend."

On January 26, 1942, defendant's counsel moved again for a continuance and a stay upon the prior record. At this time it developed that plaintiff was still confined to the hospital as a result of the injuries received in the accident and would be unable to appear, and would testify through the medium of his deposition. The court denied both motions.

On this record appellant contends that the trial court, as a matter of law, was compelled to grant defendant's motions for a stay until after the termination of the war under the provisions of the Soldiers' and Sailors' Civil Relief Act of 1940 (50 U.S.C.A., § 501, et seq.), and that, in any event, either under that act or independently thereof, the trial court abused its discretion in refusing at least a limited continuance

because of defendant's inability to be present on January 26, 1942. These contentions will be considered in order.

The particular section of the Soldiers' and Sailors' Civil Relief Act of 1940 upon which defendant relies is section 521 (50 U.S.C.A., § 521). It reads as follows: "At any stage thereof any action or proceeding in any court in which a person in military service is involved, either as plaintiff or defendant, during the period of such service or within sixty days thereafter may, in the discretion of the court in which it is pending, on its own motion, and shall, on application to it by such person or some person on his behalf, be stayed as provided in this Act, unless, in the opinion of the court, the ability of plaintiff to prosecute the action or the defendant to conduct his defense is not materially affected by reason of his military service." Under section 524 of the Act the court may grant the stay "for the period of military service and three months thereafter or any part of such period."

It is the theory of defendant that upon a showing that he was in military service and unable to attend on the day set, he was entitled to a stay until after the termination of the war, unless plaintiff could show that the fact of military service did not adversely affect defendant's ability to defend the action; that the burden rested on plaintiff to make such showing; that no such showing was made here. We are of the opinion, after considering all of the evidence offered by both sides, that the trial court did not abuse its discretion in denying the motions for a stay based upon the fact of defendant's military service.

The Soldiers' and Sailors' Civil Relief Act of 1940 does not grant an absolute right to a stay whenever it is made to appear that one of the parties is in the military service. The act was passed to relieve those in the armed services from the strain of litigation during their period of service where the fact of their service would adversely affect their prosecution or a defense of a pending case. It was intended to prevent any advantage to the civilian litigant and disadvantage to the soldier or sailor litigant growing out of the fact that one of the litigants was in the military service. Section 521, here involved, was intended solely for the benefit of those in the armed services. The section is inapplicable unless it is made to appear that the rights of a person in service will be prejudiced by a proceeding against him. (*Royster* v. *Lederle,*

128 F.2d 197; *Charles Tolmas, Inc.* v. *Streiffer,* 199 La. 25 [5 So.2d 372] ; *Lightner* v. *Boone,* 222 N.C. 205 [22 S.E.2d 426].) If it appears that the rights of one in the service would, or might, be adversely affected because of such service, the court is required to protect his interests (*Jamaica Sav. Bank* v. *Bryan,* 175 Misc. 978 [25 N.Y.S.2d 17] ; 25 N.Y.S.2d 641), but unless such is the fact this section offers no protection. (*Pope* v. *United States Fidelity & Guaranty Co.,* 67 Ga. App. 560 [21 S.E.2d 289].) The statute vests discretionary power in the trial court. (*Swiderski* v. *Moodenbaugh,* 44 F. Supp. 687, 45 F.Supp. 790.) This last mentioned case held that in determining whether a personal injury case should be stayed under this section because defendant was in military service the fact that defendant was insured was a factor to be considered by the trial court in the exercise of its discretion.

██ It is quite apparent that Congress has determined that it is not necessary in order to protect the rights of those in military service to grant to them the absolute right to a stay. The Congress determined that, in considering the rights of all concerned, they could all be best protected, including the rights of those in the service, by vesting a wide discretionary power in the trial courts of the nation. It was believed that the rights of those in service would be adequately protected by the trial judges, who, in each case, could determine whether the service man's rights would be adversely affected by the fact of his service. The Congress also determined that the rights of civilian litigants must also be considered. It is a harsh thing to tell a litigant that he must wait to enforce his cause of action until after the war. Witnesses or parties may die, and witnesses may disappear or forget the facts. However, in the national interest, wherever the rights of one in the military service will be adversely affected unless a stay is given, the court must grant a stay. That is one price civilians must pay in aiding the war effort. In any case, however, the trial judge is called upon to determine, in that particular case, which interest is of the greatest importance. Doubtful cases should be resolved in favor of the service man.

The United States Supreme Court has recently considered this problem at length. (*Boone* v. *Lightner* (June 7, 1943) 319 U.S. —— [63 S.Ct. 1223, 87 L.Ed. ——].) An action

was brought against Boone in the state courts of North Carolina to require him to account as trustee of a trust, to remove him as trustee, and to obtain a personal judgment against him in the amount of the deficiency in the trust fund caused by his illegal management. When suit was filed Boone was in the military service stationed in Washington, D. C. Boone answered, denying all material allegations of the complaint. On February 2, 1942, the cause came on for hearing. On that date his then counsel moved for a continuance until May 25, 1942, on the ground that he, the lawyer, was about to be called into military service and would not be able to try the case. This continuance was granted. In its order granting the continuance the court stated that the presence of Boone at the trial ''is highly desirable.'' The court directed a copy of the order to be sent to the Adjutant General of the United States Army, in order to advise Boone's superior officers of the importance of the litigation. On the day of the trial Boone invoked section 521 of the Soldiers' and Sailors' Civil Relief Act of 1940, and demanded a stay until the termination of the war. Prior to this date Boone's deposition had been taken. Boone was not personally present, but was represented by counsel who made the motion. The motion was denied, and Boone's counsel withdrew from the case. The court ordered the trial to proceed in the absence of Boone and in the absence of any lawyer representing Boone. The jury rendered its verdict against Boone and judgment was entered that Boone had been guilty of serious misconduct in handling the trust fund, and that he was personally liable in an amount exceeding $11,000. Boone appealed to the Supreme Court of North Carolina, and that court affirmed (222 N.C. 205 [22 S.E.2d 426]). The Supreme Court of United States, on application of Boone, granted *certiorari*. The language of that court, in affirming the North Carolina courts, is so pertinent that we quote at length from the decision:

''The positions urged by petitioner come to these: first, that defendant's military service in Washington rendered a continuance mandatory; second, if not mandatory, that the burden of showing that he could attend or would not be prejudiced by his absence was not on him, but on those who would force the proceedings; third, that the Court did not make the finding required by the Act for denial of a stay; and last, that in any view of the law the trial judge abused his discretion in this case. . . .

"1. The Act cannot be construed to require continuance on mere showing that the defendant was in Washington in the military service. Canons of statutory construction admonish us that we should not needlessly render as meaningless the language which, after authorizing stays, says 'unless, in the opinion of the court, the ability of plaintiff to prosecute the action or the defendant to conduct his defense is not materially affected by reason of his military service.'

"The Act of 1940 was a substantial reenactment of that of 1918. The legislative history of its antecedent shows that this clause was deliberately chosen and that judicial discretion thereby conferred on the trial court instead of rigid and undiscriminating suspension of civil proceedings was the very heart of the policy of the Act. While this Court had no occasion to speak on the subject, the Act was generally construed consistently with this policy.

"Reenacted against this background without reconsideration of the question beyond a statement in the Senate Committee Report that 'There are adequate safeguards incorporated in the bill to prevent any person from taking undue advantage' of its provisions, we are unable to ignore or sterilize the clause which plainly vests judicial discretion in the trial court.

"2. The Act makes no express provision as to who must carry the burden of showing that a party will or will not be prejudiced, in pursuance no doubt of its policy of making the law flexible to meet the great variety of situations no legislator and no court is wise enough to foresee. We, too, refrain from declaring any rigid doctrine of burden of proof in this matter, believing that courts called upon to use discretion will usually have enough sound sense to know from what direction their information should be expected to come. One case may turn on an issue of fact as to which the party is an important witness, where it only appears that he is in service at a remote place or at a place unknown. The next may involve an accident caused by one of his family using his car with his permission, which he did not witness, and as to which he is fully covered by insurance. Such a nominal defendant's absence in military service in Washington might be urged by the insurance company, the real defendant, as ground for deferring trial until after the war. To say that the mere fact of a party's military service has the same significance on burden of persuasion in the two contexts

would be to put into the Act through a burden of proof theory the rigidity and lack of discriminating application which Congress sought to remove by making stays discretionary. We think the ultimate discretion includes a discretion as to whom the court may ask to come forward with facts needful to a fair judgment.

"In the present case, whoever might have had the burden originally, the continuance was finally denied upon a record which disclosed the facts so far as either party saw fit to do so. The defendant and his counsel submitted affidavits and the depositions and accounts before the court revealed facts relevant to the issue.

"Whether, if the court knew only the existence of this complicated controversy and that the defendant was absent in military service, it could have cast upon the defendant the burden of showing that the litigation could not go ahead without prejudice to him, is not before us. The court made no such ruling. The defendant appeared, he pleaded his defense, he took depositions showing fully what had happened to the fund, and he supplied his own affidavit showing where he was and what he was doing. Regardless of whether defendant was under a duty to make a disclosure of his situation, once he undertook to do so, the significance alike of what his affidavit said and of what it omitted was to be judged by ordinary tests. One of these is that 'all evidence is to be weighed according to the proof which it was in the power of one side to have produced and in the power of the other side to have contradicted.' *Cooper* v. *Dasher,* 290 U.S. 106, 109 [54 S.Ct. 6, 78 L.Ed. 203]. The trial court and the Supreme Court of North Carolina did just this. They did not deny his stay because he failed to meet their ideas of burden; they weighed the evidence he offered and found its conclusions discredited by its avoidance of supporting facts within his knowledge and not within that of his adversary. That is not a ruling on burden of proof. Finding that the courts below have proceeded upon no misapprehension of the law, we turn to their dealing with the facts of the particular case.

"3. . . . The Act does not expressly require findings. It is one intended to apply to courts not of record as well as those of record, and it requires only that the court be of opinion that ability to defend is not materially affected by military service. We accept the findings as sufficiently evidencing the opinion of the court to that effect.

"4. The final question is whether the evidence sufficiently supports the opinion or whether the order constitutes an abuse of discretion.

"We think the opinion of the court that Boone's military service did not prevent him from being present and doing whatever could have been done by way of defense finds ample support in the evidence. Boone had been able to get away from Washington to go to New York for the taking of depositions on two separate occasions. He had long notice of the trial date and the court had placed in the files of his Department its order showing the desirability of his presence at that time. Boone, being a lawyer and presumably knowing the gravity of the accusations against him, might be expected to make some move to get leave to be present. If it were denied, he might be expected to expose every circumstance of his effort to the court in his plea for continuance. Boone's affidavit, after reciting that he was assigned to the International Division, Headquarters, Services of Supply, Washington, D. C., says 'The work in said Division is very heavy, and full time and some extra time are required of all officers in said Division, including the defendant. Prior to the declaration of War on Dec. 8, 1941, the work in this Division was very heavy, but since the declaration of War the volume of work has been greatly increased. No leaves whatever have been granted, except in cases of serious emergency.'

"Most lawyers trained in the equity tradition of trustee fidelity would regard a trial of this kind as a serious emergency. Did he apply for a leave at all? The affidavit pretty clearly implied that he had not. We think the court had ample grounds for the opinion that Boone made no effort to attend to duties that should weigh heavily upon the honor of a lawyer-trustee.

"There was likewise support for the opinion that the failure to be represented by counsel did not result from Boone's military service. On February 2, 1942, the court granted his request for a continuance and set the case for trial on May 25, 1942. It was stated to the court that counsel then acting for him was expecting to be called immediately into military service, and it would be necessary for defendant to procure additional counsel. Nevertheless, when the trial date arrived, the fact that this counsel had gone into service on May 13, 1942, was urged as a reason for further postponement. No showing whatever was made as to any effort to obtain other

counsel in the long interval allowed by the court for the purpose. This counsel was also stationed at Washington and said he 'would not assume to ask for leave at the present time, so soon after having reported for duty.'

"On the trial date defendant was nevertheless represented in court by local counsel. That counsel however was consulted only three or four days before the trial date and was employed for the sole purpose of making the motion for continuance, and when the court ruled on it he withdrew and declined to proceed further. The defendant's accounts presented to the trial judge showed disbursements since the beginning of the action and before trial for the following matters, among others, in connection with this case: On August 15, 1941, defendant's deposition was taken at Washington, D. C. This entailed a reporter's fee of $66.00 and a fee of $248.88 paid a Detroit attorney for appearing at the proceeding. On November 3 and 5, 1941, depositions were taken in New York City with the defendant present. These involved a court reporter's fee of $32.25, and fees in the amount of $375.00 for the Detroit attorney and New York counsel obtained to assist him. This item carried a notation that it did not 'include services rendered in the taking of depositions in other cases on same date.' From August 4, 1941, to January 26, 1942, Deal, the attorney who had represented defendant before withdrawing to accept a commission in Washington, received $218.00 for his services in representing defendant in the case. Two days after judgment, another lawyer from the firm of counsel who had withdrawn after making the motion of May 25 appeared and moved to set the verdict aside and took an appeal, later filing extensive assignments of error. Counsel who had withdrawn from the trial argued the appeal in the Supreme Court of North Carolina.

"At all times since the action began defendant has also been represented by counsel from Detroit, Michigan. His inability to appear on the trial date was explained on the ground that he was 'definitely engaged at the present time in the trial of cases at Detroit which will require his presence in Court there for approximately thirty days.' No affidavit from this counsel was produced, and no explanation is made as to how it came that other 'cases' were given priority over this in view of the long notice of the trial date and its importance to the client.

"In this Court, Boone is represented by his Detroit counsel

and by Deal, the lawyer who withdrew from the case to accept a commission in Washington. Besides these, there also appear four other lawyers, none of whom are included in the five who have represented him at previous stages in the case. . . .

"The court was dealing not only with an individual but with a trustee, one charged with default in his duty, and with a fund which was said to be in jeopardy. Defendant in spite of his military service in Washington was continuing to administer the fund. The defendant was a member of the bar, and the charges struck at his honor as well as at his judgment. Instead of seeking the first competent forum and the earliest possible day to lay his accounts out for vindication, he sought to escape the forum and postpone the day. He was both present and represented by counsel when depositions were taken which establish his speculation with the trust funds in his personal margin account. We think the record amply supports the conclusion of the trial judge that the claim that military service would prejudice the conduct of his defense, was groundless, and that the absence of himself and all of his numerous and not uncompensated counsel on the day of judgment was dictated wholly by litigious strategy.

"The Soldiers' and Sailors' Civil Relief Act is always to be liberally construed to protect those who have been obliged to drop their own affairs to take up the burdens of the nation. The discretion that is vested in trial courts to that end is not to be withheld on nice calculations as to whether prejudice may result from absence, or absence result from the service. Absence when one's rights or liabilities are being adjudged is usually *prima facie* prejudicial. But in some few cases absence may be a policy, instead of the result of military service, and discretion is vested in the courts to see that the immunities of the Act are not put too such unworthy use."

If the rules thus stated be applied to the facts of the instant case there can be no reasonable doubt that the trial court acted well within its discretionary power in refusing to grant defendant a stay. A reference to the affidavit filed by defendant discloses that he did not there take the position that his ability to defend the action would be adversely affected by his inability to be present at the trial. That contention has been made solely by defendant's counsel who admittedly appeared on behalf of an insurance company. It should also be noted that there was no affidavit of any superior

officer of defendant that he would be unable to attend the trial on the 26th, or at any other time. In addition, the record shows that defendant was ably represented at the trial by counsel for the insurance company; that defendant was available for consultation with his attorneys prior to trial; that he had signed a statement taken by the deputy district attorney in which he fully described his recollection of the incidents prior to the accident; that his deposition had been taken; that in that deposition he had testified fully as to his recollection of the events leading up to the accident; that he had also pointed out therein those portions of the signed statement which he wished to challenge; that in both the signed statement and deposition he admitted taking several drinks prior to the accident, and admitted he had no clear recollection of what occurred for some time prior to and immediately after the accident. The trial court also knew that plaintiff could not personally appear but would testify through the medium of a deposition and that plaintiff had offered to stipulate as to the testimony that would be given by defendant. It also knew that no showing had been made at all, except by defendant's unsupported assertion, that defendant was not available. None of these factors, standing alone, is conclusive. But when all of them are considered together it seems quite clear that under the rules laid down in the Boone and the other cases cited, *supra,* the trial court acted well within its discretionary powers in refusing to find that defendant's military service adversely affected the ability of defendant to defend. The defendant's position amounts to the contention that military service and inability to attend *per se* require the granting of a stay. As was so clearly pointed out in the Boone case, *supra,* that is not the law. ■ While it is true that normally a litigant in the military service is entitled to be present at the trial in order to defend or prosecute his action adequately, that right is not absolute. On the showing made the trial court was justified in believing that the insurance company was attempting to use the Soldiers' and Sailors' Civil Relief Act of 1940 as a protection for its rights, rather than as a protection for the insured. The Congress never intended that the provisions of this act should be used by insurance companies as a means of defeating a cause of action, which, in many cases, would be the result of years of postponement during which witnesses may have died, dis-

appeared or forgotten the facts, in cases where no material benefit would be received by the defendant by the delay.

█ It is no answer to this conclusion to say that this judgment is against defendant personally and not against the insurance company. Under section 11580 of the Insurance Code the judgment creditor may sue the insurance company on the judgment. (See, *Bias* v. *Ohio Farmers Indemnity Co.*, 28 Cal.App.2d 14 [81 P.2d 1057].) █ Nor is it an answer to the above conclusion to say that the complaint asked for $15,600 which might have been in excess of the amount of insurance carried. The verdict was for $3,600, well within the limits of a minimum policy. Had the verdict been in excess of the limits of the policy, the trial court could then have granted a new trial. Under the act, the trial court possesses power to halt the case at any time whenever manifest injury to the person in military service appears. (*Swiderski* v. *Moodenbaugh*, 44 F.Supp. 687, 45 F.Supp. 790.)

None of the cases cited by appellant compels or suggests a contrary conclusion. In *Royster* v. *Lederle*, 128 F.2d 197, the trial court had *granted* the stay. The plaintiff sought by *mandamus* to set that ruling aside. The appellate court held that "we cannot say, as a matter of law, that Ruggiero's rights would not be affected by proceeding to the trial of the cause in his absence." (p. 200.) The court did not hold that, had such a stay been refused, the order would be reversed, which is the problem here involved. It should be noted that in the cited case the appellate court required, as a condition to its refusal of mandate, that the insurance company post a bond in the amount of its policy to protect plaintiff in the collection of any judgment subsequently secured.

*Craven* v. *Vought*, 58 Montg.Co.L.R. 15, is a decision by a trial court in Pennsylvania. A stay was granted. In that case the insurance company made a showing that the defendant was "the only witness in his own defense; that his counsel has not been able, because of his absence with the army, to consult with him in the preparation of the case, and that his present whereabouts is unknown." (p. 16.) The trial court, in the exercise of its discretion, granted the application for a stay on such a showing.

█ Both cases held that the fact that the defendant was insured did not, as a matter of law, compel the denial of the application for a stay. We agree with these holdings. But, the existence of insurance is one factor that the trial courts

should consider in exercising the discretion vested in them. Where, as in the instant case, it is a reasonable inference that the insurance company is attempting to use the Soldiers' and Sailors' Civil Relief Act of 1940 as a means of postponing and perhaps defeating liability, and that the defendant will not be materially benefited by a stay, the trial court is justified in refusing to thus injure the plaintiff for the sole advantage of the insurance company.

Defendant also contends that either under the Soldiers' and Sailors' Civil Relief Act of 1940, or independently thereof, it was an abuse of discretion to deny his application for a limited continuance when it appeared that he would not be able to be present on Jan. 26, 1942. Insofar as this point is based on the provisions of the Soldiers' and Sailors' Civil Relief Act of 1940 what has already been said disposes of that contention. The showing that one in the military service is required to make under that act for a stay or limited continuance is much less than is required from a litigant requesting a limited continuance independently of that act. If the trial court did not abuse its discretion in denying the motion for a limited continuance under the Soldiers' and Sailors' Civil Relief Act of 1940 it certainly did not abuse its discretion in denying the application independent of that act. The rules applicable to the granting of continuances, amply supported by citations to the many cases, are set forth in 5 Cal. Jur., page 968, section 5, as follows: ''However, it is a settled rule of practice that an application for a continuance is addressed to the sound discretion of the trial court, and its ruling will not be reviewed except for the most cogent reasons. The trial court is apprised of all the circumstances of the case and the previous proceedings, and is, therefore, better able to decide upon the propriety of granting the application than an appellate court; and when it exercises a reasonable, and not an arbitrary discretion, its action will not be disturbed. It follows that an abuse of discretion must be shown to justify a reversal of the judgment because of a ruling on such matters. Thus it has been held that the sickness of a party to an action, preventing his attendance on the court, does not *ipso facto* require the court to grant an application for a continuance, made on his behalf; especially where the showing before the court fully justifies the conclusion that injustice will be as likely to follow from the granting of the continuance as from its refusal. Nor does

the absence of a party always furnish ground for a continuance.''

As has already been pointed out, the right of a litigant to be present to defend or prosecute an action is not absolute. The defendant failed to ask for a continuance for any definite period, and failed to disclose when he would be available. For reasons already stated, the trial court was justified in believing that injury would result to the plaintiff, and that the defendant would be in no way materially benefited by a delay. That being so, it was not an abuse of discretion to deny the continuance.

The judgment is affirmed.

Knight, J., concurred.

WARD, J.—I dissent. In effect, as applied to the facts of the case, the majority opinion as I read it, holds (1) that a trial court may arbitrarily determine that an insured has no interest in the outcome of litigation arising out of a personal injury action instituted against him if insured against liability; (2) that a defendant in such action whose reputation for morality and sobriety is involved, who, in a deposition and a statement to a municipal or county officer, has made conflicting statements as to details, may not by reason of military service be granted a continuance of a trial for the purpose of explaining apparent discrepancies in such statements.

The complaint was filed twelve days after the accident, and the answer four weeks later, at which time the plaintiff served and filed notice of motion to set the cause for trial. On December 12, 1941, the court set the cause for trial on January 26, 1942. On December 18, 1941 the deposition of the defendant was taken. It appears that about this time the defendant anticipated the probability of a call to military service from his draft board. On January 16, 1942, defendant moved the court for an order staying proceedings upon the ground that he was then in the military service, furnishing supporting affidavits in that regard. This motion was denied. On the last mentioned date defendant also moved the court for a continuance of the case for trial, but this motion was not ruled upon at the time of denying the stay, but subsequently, on the day of trial, was formally denied.

On January 23, 1942, a regularly noticed motion for a

stay of proceedings, based upon affidavits that the defendant was then in the United States Navy and at that time stationed in San Francisco, was heard. One of the affidavits was to the effect that defendant's commanding officer had been interviewed and had stated that it would be impossible to release Allan Johnson from duty on the date set for trial; another affidavit, by defendant, stated that he would be unable to attend, and prayed that the case be continued until such time as he is released from the navy. At the previous hearing it appeared that defendant carried insurance. At the conclusion of the second hearing the motion was denied. Among other reasons given, the court stated: "It is my view, inasmuch as the defendant is not at all personally interested in the outcome of the case, that the Court could not continue the matter under the Soldiers' and Sailors' Relief Act, or grant the motion on the ground of lack of witness—the inability of the witness to attend. I don't think I can grant the motion on that ground of the case, because there is no showing here that he cannot attend. I will have to deny the motion."

The motion was renewed on the morning of the first day of the trial, based upon the previous record. The court stated: "The motion for continuance and suspension of proceedings will be denied."

Appellant contends that the first ground given for the denial of the motion is based upon the fact that defendant was insured. Respondent does not contradict this statement.

Section 521 of the Soldiers' and Sailors' Civil Relief Act quoted in the majority opinion should be construed to effect its purpose, the protection of those in the armed service to the extent of permitting a postponement until the soldier or sailor, without restraint or restriction, is able to present his side of a contested material issue. However, the section is addressed to the reasonable discretion of the trial courts of the nation, to determine whether a litigant will be prejudiced by proceedings held in his absence, and each case should be determined upon the particular facts and surrounding circumstances. In the exercise of such discretion, if the trial court denies a postponement, and it subsequently appears that the litigant or his guarantor or indemnitor is prejudiced by reason of the absence of the parties, a new trial should be granted. In *Richey & Gilbert Co.* v. *Northwestern Natural Gas Corp.*, —— Wn.2d ——, 134 P.2d 444, 451, the court said: "The court in cases such as this one is obliged, at the outset,

to visualize the trial and the preparation of it, with a view to determining the effect of the defendant's absence. It must be ready at any stage of the proceedings to change its decision and grant the stay if good reason therefor appears.'' For this reason, on a motion prior to trial the section should be liberally but reasonably construed in favor of the soldier or sailor to protect his interest. (*Jamaica Savings Bank* v. *Bryan,* 175 Misc. 978 [25 N.Y.S.2d 17] ; 25 N.Y.S.2d 641.)

The section was not enacted particularly to protect insurance companies, though facts may arise to justify a continuance in favor of the insurance carrier upon the principle that a party in interest should not be forced to trial in the absence of a material witness (*Craven* v. *Vought,* 58 Montg. 15, 4 Monroe L.R. 11, 55 York 173), or in the absence of a party to the action whose presence might materially affect the disposition of the case (*Royster* v. *Lederle,* 128 F.2d 197) and, accordingly, whose absence in either event might be prejudicial to a determination of the material issues involved. It does not appear from the record that the amount of insurance was adequate to meet the sum prayed for in the complaint. The majority opinion assumes to the contrary, or, at least, surmises that the verdict was within the amount of the face of the policy. This assumption or surmise is without evidentiary support. Neither the court nor plaintiff demanded a bond of the insurance company that a verdict in a specified amount would be paid. (*Royster* v. *Lederle, supra.*) In addition, an insurance company has the privilege and right to demand cooperation from the insured. If the latter is a resident of the county of trial, it may be assumed that he would be of assistance in the selection of the jury, at least to the extent of indicating veniremen who might be prejudiced against him. A party's presence might have an effect upon the judgment or the amount thereof. (*Royster* v. *Lederle, supra.*)

If a proceeding may be postponed upon the application of an insurance carrier for sufficient reason, it should also be delayed if the insured has a material interest in the outcome, whether that interest be financial or personal. In *Tulley* v. *Superior Court,* 45 Cal.App.2d 24 [113 P.2d 477], referring to section 510 et seq., this court said (pp. 30-31) : ''While it is true that the above-mentioned federal statute was passed subsequent to the commencement of the action in which petitioner is a defendant, it is an announcement of policy by the

lawmaking body that normally should be the exclusive judge of policy, as to what it considers reasonable and necessary under such circumstances. Under that statute, or independent of that statute, the trial courts possess ample powers to protect the rights of those in the military service of the United States. It is inconceivable that, in a proper case, the trial court, upon a proper showing, would not grant a reasonable continuance to one engaged in military service to permit him to properly prepare his defense, and, if necessary, continue such case during the period of the defendant's foreign service. If the trial court should abuse its discretion in such a case there exist ample remedies to control such abuse." It is true that the decision by this court in that case referred to "foreign" service, but conditions might arise that would preclude the presence of a party at a trial even though he might be in the same county. As a matter of fact, if in foreign service the party would not be available.

Congress has directed a policy in relation to litigants in military service. The administration thereof rests in the discretion of the trial court. Such discretion should be used reasonably, with due regard to the rights of each side. (*Swiderski* v. *Moodenbaugh,* 44 F.Supp. 687.) It must be assumed that Congress gave mature consideration to the rights of those claiming damages in personal injury cases, and to the many contingencies that might arise, and the possible consequences that might result from delay in bringing causes to trial.

A defendant, though protected in the matter of monetary liability on a judgment, is still interested in refuting charges, if possible, against his reputation, or charges of intoxication. An intoxicated person in the operation of an automobile may become "active and alert or stupid and dull." (*Frisvold* v. *Leahy,* 15 Cal.App.2d 752, 756 [60 P.2d 151].) Immediately after an accident statements may be made that under certain circumstances require explanation. Even a statement under oath may be contradicted or explained upon a trial. (*Royster* v. *Lederle, supra.*)

In addition to the motion for postponement under the Soldiers' and Sailors' Civil Relief Act, *supra,* as previously stated, a motion for a continuance was presented and denied. An application for such continuance is ordinarily left to the sound discretion of the trial court. If bad faith appears, or the form and substance of the application for continuance is legally inadequate, denial of motions for continuance has

been upheld, but in many instances when the rights of a litigant have been jeopardized the reviewing court, in the interest of justice, has reversed the judgment. This motion, the first and only continuance requested, presented in proper form, could well have been granted in the interest of justice to give defendant, a material witness whose absence was reasonably explained, an opportunity to be present at the trial. Irrespective of the Soldiers' and Sailors' Civil Relief Act, such has been the determination of the reviewing courts in this state. (*Jaffe* v. *Lilienthal*, 101 Cal. 175 [35 P. 636]; *Carl* v. *Thomas*, 116 Cal.App. 294 [2 P.2d 872]; *Pacific Gas etc. Co.* v. *Taylor*, 52 Cal.App. 307 [198 P. 651]; *Betts Spring Co.* v. *Jardine Mach. Co.*, 23 Cal.App. 705 [139 P. 657]; *Morehouse* v. *Morehouse*, 136 Cal. 332 [68 P. 976]; *Swayne & Hoyt* v. *Wells-Russell & Co.*, 169 Cal. 204 [146 P. 686].)

If not independent of the federal act, certainly in conjunction with it, a continuance should have been granted. Under the act a stay or continuance may be granted for any period less than the period of military service (sec. 524).

The majority opinion relies upon *Boone* v. *Lightner*, a very recent decision which does not appear officially at this writing to have been declared final. The majority opinion also cites *Swiderski* v. *Moodenbaugh*, 44 F.Supp. 687 and 45 F.Supp. 790. On appeal in the Swiderski case, 45 F.Supp. 790, it was assumed that the parties to the action in respectively requesting and refusing a postponement were playing a game. This brought forth the following statement by the court (p. 792): "This court repudiates such a game and orders the cause set for immediate trial." If appellant in the present action had been playing a game he should have come under the rule in the Swiderski case. Such facts do not here appear. There was no agreement to be bound by the amount of insurance carried by defendant; the date for trial was a date subsequent to defendant's entry into military service, and there was no action taken by the insurance company to delay proceedings other than the application under the provisions of the Soldiers' and Sailors' Civil Relief Act, and appellant was acting in good faith in making the ordinary motion for a continuance.

In the Boone case the same condition existed as in the Swiderski case. The petitioner was playing a game. He was trifling with the court. When the numerous quotations from the Boone case, found in the majority opinion are considered, in view of other facts as set forth in the opinion of the Su-

preme Court of the United States, the conclusion reached is understandable.

Boone, a lawyer, and executor and trustee of his mother-in-law's estate, was charged with "losses caused by illegal management" of the fund. "He was then in military service of the United States as a Captain stationed in the office of the Under Secretary of War in Washington. . . . the same day the summons was served, he changed his 'domicile and legal residence' to Washington, D. C. . . . He pleaded at length facts to support his claim that he was no longer domiciled in North Carolina . . . Boone moved for a continuance to the 25th of May, 1942, his counsel, Roy L. Deal, stating that he expected soon to be called into service and would be unable to try the case, and asking the continuance in order to give defendant ample time to employ other counsel. The request was granted, and that date peremptorily set for the trial. . . . Boone was not present, but counsel appeared for him to move for a further continuance under the Soldiers' and Sailors' Civil Relief Act. This motion was denied, counsel *who had presented the motion withdrew from the case,* and the trial proceeded. The verdict of the jury went against Boone; and judgment was entered that the trust was governed by the terms of the will, that Boone had been guilty of serious misconduct of the trust fund, and that he be held personally liable for the consequent loss to the trust fund of more than $11,000, and removed as trustee. . . . Boone had been able to get away from Washington to go to New York for the taking of depositions on two separate occasions. He had long notice of the trial date and the court had placed in the files of his Department its order showing the desirability of his presence at that time. Boone, being a lawyer and presumably knowing the gravity of the accusations against him might be expected to make some move to get leave to be present. If it were denied, he might be expected to expose every circumstance of his effort to the court in his plea for continuance. . . . Most lawyers trained in the equity tradition of trustee fidelity would regard a trial of this kind as a serious emergency. Did he apply for a leave at all? The affidavit pretty clearly implied that he had not. . . . No showing whatever was made as to any effort to obtain other counsel in the long interval allowed by the court for the purpose. This counsel was also stationed at Washington and said he 'would not assume to ask for leave at the present time, so soon after having reported for duty.' On the trial date defendant was neverthe-

less represented in court by local counsel . . . he withdrew and declined to proceed further. . . . Counsel who had withdrawn from the trial argued the appeal in the Supreme Court of North Carolina. At all times since the action began defendant has also been represented by counsel from Detroit, Michigan. His inability to appear on the trial date was explained on the ground that he was 'definitely engaged at the present time in the trial of cases at Detroit which will require his presence in Court there for approximately thirty days.' No affidavit from this counsel was produced, and no explanation is made as to how it came that other 'cases' were given priority over this in view of the long notice of the trial date and its importance to the client. In this Court, Boone is represented by his Detroit counsel and by Deal, the lawyer who withdrew from the case to accept a commission in Washington. Besides these, there also appear four other lawyers, none of whom are included in the five who have represented him at previous stages in the case. . . . The court was dealing not only with an individual but with a trustee, one charged with default in his duty, and with a fund which was said to be in jeopardy. Defendant in spite of his military service in Washington was continuing to administer the fund. The defendant was a member of the bar, and the charges struck at his honor as well as at his judgment. Instead of seeking the first competent forum and the earliest possible day to lay his accounts out for vindication, he sought to escape the forum and postpone the day. He was both present and represented by counsel when depositions were taken which establish his speculation with the trust funds in his personal margin account. We think the record amply supports the conclusion of the trial judge that the claim that military service would prejudice the conduct of his defense, was groundless, and that the absence of himself and all of his numerous and not uncompensated counsel on the day of judgment was dictated wholly by litigious strategy. . . . But in some few cases absence may be a policy, instead of the result of military service, and discretion is vested in the courts to see that the immunities of the Act are not put to such unworthy use." (italics added)

Though it appeared that Boone was "playing a game," "trifling with the court," guilty of "litigious strategy," the opinion was not unanimous. In the dissenting opinion by Mr. Justice Black the following well-considered and appropriate statement was made: "I believe that the clause under

consideration requires that an action against a person in military service must be stayed unless the trial judge concludes (a) that no personal judgment will result, and that the action will in effect preserve the interests of all the parties for the duration of the war; or (b) that the defendant is only a formal party; or (c) that the defendant need not be present for any purpose, either before, during, or after the trial, and that he will be adequately represented and has no need to testify or participate in any way; or (d) that the defendant's military service does not preclude him from having ample opportunity to get ready for, and to take his necessary part in the litigation. . . . The Court emphasizes that Boone is a member of the bar. But for the duration of the war, he is primarily a soldier, with a job to do which Congress intended should overshadow personal interests, whether his, or those of others who seek a personal judgment against him. . . . He is required to devote himself to serious business and should not be asked either to attempt to convince his superior officers of the importance of his private affairs or to spend his time hunting for lawyers. The trial court should, at the very least, have inquired of the appropriate military authorities whether the petitioner could be granted ample leave to prepare his defense and be present for trial. If the Act does not require this, it serves little purpose. It may be argued that this petitioner, a man of knowledge and experience, is as competent to ask his superior officer for leave as is the trial court; but the argument fails because the policy set here, no matter how many qualifications the Court tries to work into it, will shoot far beyond the confines of this case.''

I am of the opinion that Mr. Justice Black is correct. Though *Boone* v. *Lightner, supra,* was not cited in argument by the litigants herein, the majority opinion quotes freely therefrom. It fails, however, to be guided by the repeated admonition of Mr. Justice Jackson that each case should be governed by the particular facts involved. In the majority opinion the holding with reference to the lawyer-captain charged with misappropriation of money, is held applicable to a sailor who was unfortunately involved in an automobile accident. In the Boone case there was an apparent effort made that Boone should never be forced to testify. In the present case the court was informed by the attorney representing the defendant that ''if Allen Johnson is available whenever this case shall be tried, it is my intention, of course, to produce him as a witness.''

A litigant is entitled, if possible, to be present at a trial. In the present case the reputation of the defendant for morality and sobriety was at stake. A deposition made by him was introduced, but his absence precluded an opportunity to interpret statements contained therein or to explain the circumstances surrounding a statement made to the district attorney of the county shortly after the accident as to visits to certain places earlier in the evening.

The insurance company was prevented from conferring with the defendant relative to the use of challenges to prospective jurors. This was important in view of the fact that defendant was a resident of the county, and his reputation as a visitor to certain houses indicated in the record as houses of ill-fame was an evidentiary matter. There is some evidence that he did not actually enter the particular places, and also evidence by a physician, called in by the police, who examined defendant immediately after the accident that he was not intoxicated. No charge of intoxication while driving or otherwise was placed against defendant. This likewise is important in view of the conclusion set forth in the majority opinion that the accident "was due to the liquor he had consumed." The opinion does not hold that defendant was intoxicated, although that was one of the main contentions of plaintiff. The defense should have been afforded the right to present the defendant as a witness and thus permit the jury to determine from the character of his testimony and the manner in which he might testify the merits of the contentions of the respective parties. The presence of the defendant no doubt would have materially affected the disposition of the case. (*Royster* v. *Lederle, supra.*)

It was an abuse of discretion to deny a continuance until it was demonstrated that defendant purposely enlisted to avoid the trial, or that he could have appeared notwithstanding his duty in military service.

In my opinion the judgment should be reversed.

A petition for a rehearing was denied July 26, 1943. Ward, J., voted for a rehearing. Appellant's petition for a hearing by the Supreme Court was denied August 23, 1943. Schauer, J., voted for a hearing.