## GLICK CLEANING & LAUNDRY COMPANY v. WADE, ADMINISTRATOR.

### Opinion delivered July 5, 1943.

*Myles Friedman,* for appellant.

*Surrey E. Gilliam* and *Pryor & Pryor,* for appellee.

GRIFFIN SMITH, Chief Justice. M. G. Wade, as administrator of the estate of Hopkins Wade, alleged in a joint action against Glick Cleaning & Laundry Company and D. D. Panich that the intestate died owning 480 shares of stock in the Laundry corporation. This, the administrator said, had at all times been Wade's property, although issued to Panich, and by Panich indorsed and mailed to Wade.

Panich was served April 4, 1942. His answer of July 22 was a general denial. Shortly thereafter the Laundry corporation answered, admitting issuance of the stock and liability to the true owner. The answer was in the nature of an interpleader. Panich also wrote that he would file an amended answer, but did not do so.

Trial was set for October 21. Panich, a resident of Little Rock, wrote that it would not be possible for him to appear before the first of November. The cause was advanced to November 4. October 26th Panich wrote the Laundry corporation's attorney, saying he would enter the army November 2. This letter in transit "crossed" one written to Panich informing him in respect of the new trial date. Panich requested the chancery clerk to tell the court what his status would be, ". . . with the result that this case be continued until my discharge from the armed forces."

November fourth the court considered Panich's letter and continued the hearing until November 25. Trial was then had, with decree in favor of the administrator. There was direction that upon publication of notice that the stock certificate had been lost, (and in the absence of a response to such notice) the corporation should issue a duplicate certificate in the name of M. G. Wade, administrator. Wade was required to execute bond. Final decree was rendered December 22. The Laundry Company was indemnified against ". . . all loss, penalties, damages, costs, and expenses, by reason of the issuance and delivery [of a new stock certificate"].

The only question on appeal is whether discretion was abused in refusing to stay on Panich's unverified petition. Although the manner of presentation was informal, and there was no evidence to support Panich's assertion he would be in the army November 2, we shall assume the court did not question the status. We shall further assume refusal to continuance was predicated upon a finding that this defendant, knowing he would join the army, did not use due diligence to procure

adjudication of his rights at a time when this could be done.

The Laundry Company alone has appealed. Regardless of Panich's alleged interest in the stock certificate, appellant is protected. Sufficiency of the bond is not questioned. Contention is that the decree should be reversed, with directions to stay all proceedings ". . . in conformity with provisions of the Soldiers' and Sailors' Civil Relief Act of 1940 and amendments thereto."

The Act was construed in *Reynolds* v. *Haulcroft*, 205 Ark. 760, 170 S. W. 2d 678. It was there said that because Reynolds had asked for a stay, discretion was taken from the trial court, "unless, in the opinion of the court, the ability . . . of the defendant to conduct his defense is not materially affected by reason of his military service."

It was further held, generally, that under the Act (54 Stat. 1178, 1181, 50 U. S. C. A. App. § 521) the burden rests on the party resisting a stay to satisfy the court "by clear and convincing evidence" that rights of the soldier or sailor would not be impaired through denial of a continuance.

Subsequent to our decision in the Reynolds-Haulcroft case, the Supreme Court of the United States construed § 521 of the Relief Act and held that congress intended courts should have discretion to determine the primary question—that is, whether the party requesting a stay would be prejudiced through refusal. *Daniel F. Boone, Petitioner,* v. *Clarence M. Lightner, et al.,* 63 S. Ct. 1223.

Facts in the Boone-Lightner case are similar to those in the instant appeal. Boone was trustee of a $15,000 fund intended for his daughter's benefit and was charged with irregularities. A state court in North Carolina overruled Boone's request that the hearing be continued and all proceedings stayed because he was a captain stationed in the office of the Under Secretary of War in Washington. Judgment went against him for

$11,000. The State Supreme Court affirmed. 222 N. C. 205, 22 S. E. 2d 426. The controversy reached the U. S. Supreme Court on certiorari.

In the very able opinion written by Mr. Justice JACKSON there is the statement that "The federal question in this case is whether a stay of proceedings against a defendant in military service has been refused under circumstances which denied rights given by the Soldiers' and Sailors' Civil Relief Act of 1940. The controversy in which he was engaged is for state courts to settle, and we deal with the facts only as they relate to this federal question."

After stating essential facts and quoting the applicable section of the Relief Act, it was said:

"The positions urged by petitioner came to these: first, that defendant's military service in Washington rendered a continuance mandatory; second, if not mandatory, that the burden of showing that he could attend or would not be prejudiced by his absence was not on him, but on those who would force the proceedings; third, that the court did not make the finding required by the Act for denial of a stay; and last, that in any view of the law the trial judge abused his discretion."

On the first proposition it was held that "The Act cannot be construed to require continuance on mere showing that the defendant was in Washington in the military service. Canons of statutory construction admonish us that we should not needlessly render meaningless the language, which after authorizing stays, says 'unless, in the opinion of the court, the ability of plaintiff to prosecute the action or the defendant to conduct his defense is not materially affected by reason of his military service'."

The learned justice engaged in an exposition of the Act, commenting that the 1940 measure was a substantial reënactment of the 1918 law. That part of the opinion is: "The legislative history of its antecedent shows that this clause was deliberately chosen and that judicial discretion thereby conferred on the trial court instead

of rigid and undiscriminating suspension of civil proceedings was the very heart of the policy of the Act. While this court had no occasion to speak on the subject, the Act was generally construed consistently with this policy. Reënacted against this background without reconsideration of the question beyond a statement in the Senate Committee Report that 'There are adequate safeguards incorporated in the bill to prevent any person from taking undue advantage' of its provisions, we are unable to ignore or sterilize the clause which plainly vests judicial discretion in the trial court.''

Later the question was asked by Mr. Justice JACKSON (in respect of good faith): ''Did [Boone] apply for a leave at all?'' Reply by the Justice was: ''The affidavit pretty clearly implies that he did not. We think the court had ample grounds for the opinion that Boone made no effort to [defend against allegations that he was recreant as trustee'']—allegations, as was said, that should weigh heavily upon the honor of a lawyer-trustee.

Boone, like Panich, was an attorney. Panich, if facts found by the trial court are as the decree reflects, (and the decree *is* sustained by sufficient evidence) was trustee for Hopkins Wade; and Panich, like Boone, was not unfamiliar with court requirements; nor was he a stranger to procedural matters and the Relief Act which he seeks to invoke. Neither may we presume the court erred in finding that procrastination was intentional, or, if not designed for the end Panich seems to have had in view, at least there was no showing of effort made in good faith to respond to orderly processes of the court. And, lastly, Panich, like Boone, did not apply for leave, or show that request for deferment was refused.

By this we do not mean to say that if duty should call to the service one who has a suit pending, such litigant may place his personal interest before the national need. The exact contrary is true. What is intended is that when, as here, a man knows weeks in advance that his application for a commission will probably be accepted, and that he will be called at a known date, there

is the dual duty of making ready for induction and of facilitating work of the court in the forum where such defendant's litigable interests are pending.

The Boone-Lightner opinion says the Act makes no express provision "as to who must carry the burden' of showing that a party will or will not be prejudiced." This, thought the court, was in pursuance of a policy of making the law flexible to meet the great variety of situations no legislator and no court is wise enough to foresee. "We, too," says the opinion, "refrain from declaring any rigid doctrine of burden of proof in this matter, believing that courts called upon to use discretion will usually have enough sound sense to know from what direction their information should be expected to come. . . . We think the ultimate discretion includes a discretion as to whom the court may ask to come forward with facts needful to a fair judgment."

As to whether the findings of the trial court in the North Carolina case met requirements of the Act, Mr. Justice JACKSON said:

"Of course this is not a finding in the words of the statute that the ability of the defendant 'to conduct his defense is not materially affected by reason of his military service,' but there is no doubt that it was intended to be in substance the equivalent. . . . The Act does not expressly require findings. It is one intended to apply to courts not of record as well as those of record, and it requires only that the court be of opinion that ability to defend is not materially affected by military service."

As a pattern from this court, we substitute the rule laid down in the Boone-Lightner case for that promulgated in the Reynolds-Haulcroft appeal, and modify the holding which circumscribes discretion. We also modify language which declares that the burden is on the party resisting a stay to satisfy the court "by clear and convincing evidence." Necessarily we must adhere to the procedure declared in the decision of the Supreme Court of the United States. It is there that the final jurisdiction respecting federal questions of this nature rests.

14

[In a footnote to the Boone-Lightner case it is said: "We express no opinion on the question whether Boone could have the judgment opened upon proper application under § 200 (4), 50 U. S. C. A. App. § 520 (4)." Neither do we, in disposing of this appeal, express an opinion regarding Panich's ultimate rights.]

Affirmed.

Mr. Justice McFADDIN concurs.

McFADDIN, J., (concurring). I concur in the result reached by this court, but employ a different process of reasoning from that reflected in the majority opinion.

Appellee filed suit against the Glick Cleaning & Laundry Co. and D. D. Panich. The Glick Cleaning & Laundry Co. was not entitled to claim the benefits of the Soldiers' and Sailors' Civil Relief Act because that company was not protected by said Act. United States Code Annotated, Title 50, App. § 524 says: "Where the person in military service is a co-defendant with others, the plaintiff may nevertheless, by leave of court, proceed against the others."

So I make the point that at all events the Soldiers' and Sailors' Civil Relief Act gave the trial court the absolute right to allow the suit to proceed against the Glick Cleaning & Laundry Company independently of any interpretation of United States Code Annotated, Title 50, App. § 521, which is the section discussed in the majority opinion.

In my opinion, the rights of Panich are protected, because after the end of his military service he may proceed as provided by United States Code Annotated, Title 50, App. § 520 (4).