CUDDIE SEMLER, Administratrix, Appellee, v. WALTER OERTWIG et al., Appellants.

No. 46355.

234

R. B. Hawkins, of Leon, and Herrick, Sloan & Langdon, of Des Moines, for appellants.

Hoffman & Carter, of Leon, and O. M. Slaymaker, R. E. Killmar, D. D. Slaymaker, all of Osceola, for appellee.

BLISS, J.—About eleven o'clock on the night of August 25, 1941, plaintiff's intestate was driving his 1929-model Pontiac coupé westward on paved Highway No. 69, between Davis City and Lamoni, in Decatur county. His wife, the plaintiff, and Mamie Bonnett, a guest, were riding with him. They were proceeding to their homes in Lamoni. The car had just descended the western slope of a small hill, and, after traversing a short level stretch, was going up another hill with less than a five per cent grade, and was about five hundred feet from its top when the car was struck on the rear left-hand corner, by the truck, which was also traveling westward. The occupants of the coupé, according to the testimony of Mrs. Semler and Miss Bonnett, were thrown out and Mr. Semler died a few days later from injuries received. Each of the lady occupants has brought an action against these defendants. The concrete slab of the roadway is eighteen feet wide and the north shoulder is five or six feet

wide, and it and a shallow ditch beyond were grassed over to the fence. Both vehicles were traveling on the right or north side of the paved slab and the collision occurred on that side. The coupé, according to the lady occupants, was traveling between fifteen and twenty miles an hour at the time of the collision. After it was struck the coupé went about fifty feet westward and stopped, partly on the north shoulder and partly in the ditch, in an upright position, facing northeast. The left rear of the car was quite badly demolished. It had a value of about $100 before the collision. It had been raining intermittently along the routes of both vehicles that evening. It was not raining at the time of the collision but there was much lightning and thunder. It was quite misty and foggy and the air was so full of moisture that drops of water would form on the windshield and require the use of the wiper.

The truck was a ton-and-a-half 1941 Ford V-8 and had been driven about a month and was in good operating condition in all its parts. When empty it weighed about five thousand pounds. The defendant Norman Williams owned the truck but was not on it at the time of the collision. It was being operated at that time by his codefendant, Oertwig. A brother of Williams was on the truck but was asleep prior to and at the time of the collision. The truck was empty and was being driven from Des Moines to Kansas City for a load of fruit and vegetables.

This case had been tried once before, early in 1942, and there was a judgment for the defendants on a verdict of the jury. The judgment was set aside by the judge then presiding, for reasons not appearing in this record. Oertwig testified at that trial, but was a member of the United States Navy and on the high seas at the second trial. When we speak of his testifying hereinafter we will mean that testimony of his was read from a transcript of the former trial.

Oertwig testified that he had been driving at about forty miles an hour, where the visibility permitted it, and was driving at that speed just prior to the collision. He testified that, though his lights were lighted and he was keeping a lookout, he did not see the coupé until the truck was almost upon it and that he immediately turned to the left across the black line but

did not quite clear the left rear corner of the coupé. The right headlight was injured, as was also the right end of the bumper, and the right front fender was crumpled over the wheel, interfering with its being turned. The front axle was sprung. The truck went along on the left side of the pavement, and after turning to the right across the paving came to a stop across a cornfield fence.

The plaintiff and Miss Bonnett testified that the right rear tire of the coupé blew out about a half mile before the collision, and all of them got out to examine it and decided to drive on to a farmhouse and telephone the Semler boy to come for them. They testified that the red taillight on the left rear corner of the car was lighted at that time, as were also the headlights. Oertwig testified that he could not see whether the headlights on the coupé were lighted, but that he saw no taillight, and that the tail lamp was not lighted. It was broken off by the collision. He also testified that he was not certain whether the coupé was moving or was stopped on the pavement, but he found a jack lying along the edge of the pavement and a tire pump about the middle of the right lane. Leon Williams gave similar testimony and also spoke of some other tire tools that were picked up. These two witnesses also testified that after they got out of the truck and came back to the coupé Mrs. Semler was bending over her husband, crying and saying, rather hysterically:

"I told him not to do it. I told him not to. I told him not to stop there."

She denied this and so did Miss Bonnett, although the latter testified that after the collision she did not see either Mr. or Mrs. Semler.

There is testimony from witnesses on each side that after the collision and as the Semler car stood on the shoulder it was in gear and the emergency brake was set. There is no evidence that anyone did anything to the car until Mr. Derry came out with the wrecker. A road patrolman, two sheriffs, and a deputy had been on the ground since shortly after the collision. They were having difficulty getting the car hooked onto the wrecker. Mr. Derry, for the plaintiff, testified:

"I don't recall whether the car was in neutral, but I remember one of the boys saying the emergency brake was on. That was at the time my wrecker was right at the rear of the car trying to pull it out. They wanted it to roll down a little bit. It was necessary for them to release that brake and it did roll down and I did hook on."

Plaintiff alleged seven grounds of negligence in her petition, and prayed for judgment against both defendants for the sum of $7,500. Each defendant filed answer denying generally. The court submitted the following grounds of negligence: 1. In failing to have the truck under control. 2. In failing to keep a proper lookout on the road ahead, and failing to discover the automobile of plaintiff's intestate in time to avoid coming into collision with the same. 3. In failing to bring said truck to a stop within the assured clear distance ahead. The verdict and judgment were for $4,229.15.

Appellee in her printed argument refers to and briefly argues her motion to dismiss the appellants' appeal. The motion was submitted to this court and overruled on September 21, 1943, before the submission of the appeal.

I. The first error assigned by the appellants is in the order of the court overruling their motions to continue the trial of the action for the reason that Walter Oertwig, one of the appellants and the main witness for the defense, was a member of the United States Navy and in service beyond the borders of the United States, and that the cause of action could not properly be presented nor a defense made without his personal presence. The September term of court began on the 28th of that month. Trial notices had been filed for that term by the appellee in this action, and also by the plaintiffs in the other two actions against the appellants. The first motion for continuance was filed on October 5, 1942. Attached to it was an affidavit of Oertwig's father-in-law, executed on September 18, 1942, and stating that about ten days previously Oertwig had telephoned to the affiant from San Diego, California, that he was being shipped out for service somewhere in the Pacific Ocean.

The appellee filed a written resistance to the motion and a

hearing was had and some testimony introduced by appellee. There is nothing in the record to show when Judge Miles set aside the judgment for defendants in the first trial. It was shown that the case of Miss Bonnett was set for trial at the May 1942 term, and a similar motion for continuance was then sustained. Oertwig had enlisted in the Navy at the time of the first trial, and expected to and did go to the Navy as soon as that trial was over. Appellee's resistance alleged that the motion was not filed as provided in Code section 11446; that there had been no diligence shown in regard to taking the testimony of Oertwig; that there was no statement of facts as distinguished from legal conclusions; that his testimony had been taken and transcribed in the former trial, and "his testimony so given in that case would be admissible in the trial of this case as a deposition just as though it had been regularly taken as such, and that being true, defendants would not be deprived of his testimony." Counsel for the appellee informed the court that "the real defendant is the insurance company." In overruling the motion the court said:

"In this case you have had a trial once of the case, and the party has been examined and his testimony is all a matter of record *and can be read to the jury.* I don't apprehend, as far as this particular defendant is concerned, that it will amount to very many dollars and cents whether he is here and testifies or not as a witness. Probably somebody else would have to answer for whatever judgment was returned in the case." (Italics ours.)

On October 14, 1942, the appellants filed a renewal of and amendment to their first motion for continuance, specifically referring to the provisions of the Soldiers' and Sailors' Civil Relief Act [50 U. S. C., section 501 et seq.], in which they amplified the matters to which the witness would testify, and the importance of having the jury hear him testify, and the necessity of his being present to aid in the defense and to testify respecting any new testimony which appellee might introduce. In a dictated resistance to the reporter, while the jurors were in the body of the courtroom, counsel for appellee

stated that appellants could use the testimony of Oertwig given in the other trial, and in this way would not be deprived of the testimony of Oertwig; that the motion should be overruled "for the reason that Oertwig is not the real defendant in the case; that the real defendant in this case is Norman Williams the owner of said truck, *and the insurance company which was carrying his insurance.*" (Italics supplied.)

Upon objection of appellants to the quoted remark, the court ordered the jurors out of the courtroom and they retired. Counsel for appellee then asked appellants' attorney the name of the insurance company, and upon being told dictated into his resistance that the insurance company was the real defendant. Counsel again stated that, "Oertwig testified fully here in the former trial of this case, and they have got his testimony transcribed and certified." The court, in overruling the motion, referred to the fact of the defense having this testimony; that the motion did not comply with the statute; that there was no diligence in trying to get the witness' testimony; that it was discretionary with the court; and that, "* * * it is just another one of those cases where as the Court sees it, he is simply a nominal party here. It won't make five cents difference to him one way or another which way the decision goes in this case."

Appellants then moved for a continuance of the case because of the statement made in the presence of the jurors by counsel for appellee that the real defendant was Williams and his insurance carrier. This motion was overruled.

The chief contentions of the appellee in support of the court's denial of appellants' motion for continuance are: first, that the motion was neither timely made nor in compliance with the provisions of Code section 11446; second, that Oertwig was not a real defendant or party in interest, but was a defendant in name only, with no financial interest in the outcome of the action, and that the insurance carrier of the defendant Williams was in fact the real defendant, and that Oertwig could not be materially affected by his absence from the trial in the Naval service; third, that in his absence the transcript of his testimony in the first trial could be read to the jury.

There is no merit to the first contention. Oertwig bases his right to a continuance upon the provisions of the Soldiers'

and Sailors' Civil Relief Act of 1940, 50 U. S. C., section 501 et seq., and not upon the Iowa Code section. There is no provision in this Federal Act requiring compliance with any section of the Iowa Code relative to stay of proceedings or continuance in civil actions. Section 512 of the Act provides that it shall apply to proceedings in any court in any state of the United States. Section 521 of the Act is as follows:

"Stay of proceedings where military service affects conduct thereof. *At any stage thereof* any action or proceeding in any court in which a person in military service is involved, either as plaintiff or defendant, during the period of such service or within sixty days thereafter may, in the discretion of the court in which it is pending, on its own motion, and shall, on application to it by such person or some person on his behalf, be stayed as provided in this Act, unless, in the opinion of the court, the ability of plaintiff to prosecute the action or the defendant to conduct his defense is not materially affected by reason of his military service."

The italicized words clearly express the intention that the application may be made "at any stage" of the proceedings. This distinction in procedure in the case of a soldier making application for a continuance, and a codefendant, not a soldier in service, making a like motion, is clearly shown by the holding of this court in Lucas v. Casady, 12 Iowa 567. All that section 521 requires is that an application, setting out the necessary facts, be made by the affected party or by someone in his behalf. No requirement is mentioned that the application shall be verified or sworn to, or that it set out the facts to which the party will swear, or when he may be able to appear. In Lang v. Lang, 176 Misc. 213, 25 N. Y. S. 2d 775, a letter received by the court from a defendant stating that he was an officer of the Regular Army and subject to War Department orders, calling attention to the Relief Act, and that someone be appointed to protect his interests, was held to be sufficient.

The Civil Relief Act of 1940 and the very similar Act of 1918 and their numerous predecessors, both state and national, were enacted for the benefit of the men in the service, in times

of war or of grave emergency. Section 510 of the present Act states one of its purposes to be "to suspend enforcement of civil liabilities, in certain cases, of persons in the military service of the United States in order to enable such persons to devote their entire energy to the defense needs of the Nation * * *." When the present Act was passed we were simply preparing for the national defense. Such legislation is by no means new or novel. Bowsman v. Peterson, 45 F. Supp. 741, 742, 743; 13 C. J., Continuances, section 42 (2); 17 C. J. S., Continuances, section 30. In fact, it has been said to be merely a statutory expression of the common-law principle that in times of war the nation should grant such relief and protection to those in its military service. State ex rel. Buck v. McCabe, 140 Ohio St. 535, 45 N. E. 2d 763, 766. It has uniformly been the holding of all courts that such legislation should not be construed narrowly or technically, but broadly and liberally, to effect its purpose to protect both the nation and the interests of those engaged in its defense, keeping in mind, nevertheless, that it is to be used as a shield for defense, and not as a sword for attack or as an instrument for the oppression of opposing parties. Continuances under the Act will necessarily delay the determination of matters in litigation and may perhaps result in injury to the party resisting the continuance. Such inconveniences and injuries are to be deplored but they are sacrifices which must be made for the common good. As said in Bowsman v. Peterson, supra, 45 F. Supp. 741, 744, such a result is a reasonable exaction by society from one of its members for its own preservation; a proper imposition by the state upon an individual citizen in the course of its discharge of its constitutional obligation to " 'provide for the common Defence.' " To the same effect, see Craven v. Vought, 58 Montg. Co. Rep. 15 (Pa. Com. Pleas), 4 Monroe Legal Rep. 11, 55 York Legal Rec. 173. For decisions upholding, in general, the above-stated principles, see In re Estate of Cool, 19 N. J. Misc. 236, 18 A. 2d 714; Royster v. Lederle, 6 Cir., Mich., 128 F. 2d 197, 200; Hunt v. Jacobson, 178 Misc. 201, 33 N. Y. S. 2d 661; Batts v. Little, 222 N. C. 353, 23 S. E. 2d 41; Reynolds v. Haulcroft, 205 Ark. 760, 170 S. W. 2d 678; Johnson v. Johnson, 59 Cal. App. 2d 375, 139 P. 2d 33; Laperouse v. Eagle Indemnity Co., 202 La. 686, 12 So. 2d 680; Hell-

berg v. Warner, 319 Ill. App. 117, 48 N. E. 2d 972; Isaacs v. Isaacs, 37 N. Y. S. 2d 527; Nassau Sav. & L. Assn. v. Ormond, 179 Misc. 447, 39 N. Y. S. 2d 92; Clark v. Mechanics' American Nat. Bk., 8 Cir., Ark., 282 F. 589; State ex rel. Buck v. McCabe, supra, 140 Ohio St. 535, 45 N. E. 2d 763; Lanham v. Cline, 44 F. Supp. 897; Twitchell v. H.O.L.C., 59 Ariz. 22, 122 P. 2d 210, 212; In re Bashor, Wash., 132 P. 2d 1027; Glick Cleaning & Laundry Co. v. Wade, Ark., 172 S. W. 2d 929; Lightner v. Boone, 222 N. C. 205, 22 S. E. 2d 426; Boone v. Lightner, 319 U. S. 561, 63 S. Ct. 1223, 87 L. Ed. 1587.

As stated in a number of the above-cited cases, and clearly indicated in section 521 of the Civil Relief Act, the controlling factor in determining whether the continuance should be granted is whether or not the beneficiary of the Act, in the prosecution or defense of his action, is materially affected by reason of his military service. If he will be so affected, and he is not at fault, the stay should be granted. The mere fact that a litigant is in one of the services covered by the Act does not alone entitle him to a continuance. The Act does not grant an absolute right to a stay. Johnson v. Johnson, supra, 59 Cal. App. 2d 375, 139 P. 2d 33; Boone v. Lightner, supra, 319 U. S. 561, 63 S. Ct. 1223, 87 L. Ed. 1587 (footnotes, pages 1590–1592). Congress did not intend that the rights of civilian litigants should not be considered. Whether such a litigant shall be entitled to proceed with the trial of his cause depends upon the circumstances. The serviceman may by his conduct waive his rights under the Act. The nature of the action, or his relation to it, or his lack of knowledge of the matters involved may render his presence at the trial unnecessary to an adequate protection of his rights. His lack of diligence in protecting his rights when he could have, or his failure to obtain leave to be present when it might have been obtained, may be considered. But doubtful cases should be resolved in favor of the serviceman. Johnson v. Johnson, supra, 59 Cal. App. 375, 383, 139 P. 2d 33, 37, in which opinion it was also said:

"However, in the national interest, wherever the rights of one in the military service will be adversely affected unless a stay

is given, the court must grant a stay. That is one price civilians must pay in aiding the war effort.''

In the concurring opinion of Smith, C. J., in Reynolds v. Haulcroft, supra, 205 Ark. 760, 765, 170 S. W. 2d 678, 680, he said:

''\* \* \* I would resolve every reasonable doubt in favor of the soldier, sailor, or marine, to the end that no substantial right be impinged and that no opportunity to assert a right be denied because of the circumstance of absence.''

In Boone v. Lightner, supra, 319 U. S. 561, 575, 63 S. Ct. 1223, 1231, 87 L. Ed. 1587, 1596, the Supreme Court of the United States, on a writ of certiorari to the Supreme Court of North Carolina to review a judgment of the trial court denying a stay, affirmed the judgment. Without detailing the facts, it suffices to say that the majority opinion found that they justified the findings of the trial court, one of which was that Boone, the defendant below, who was asking for the stay, was seeking to use the provisions of the Act ''as a shield for his wrongdoing.'' Speaking for the majority, Justice Jackson said:

''The Soldiers' and Sailors' Civil Relief Act is always to be liberally construed to protect those who have been obliged to drop their own affairs to take up the burdens of the nation. The discretion that is vested in trial courts to that end is not to be withheld on nice calculations as to whether prejudice may result from absence, or absence result from the service. Absence when one's rights or liabilities are being adjudged is usually prima facie prejudicial. But in some few cases absence may be a policy, instead of the result of military service, and discretion is vested in the courts to see that the immunities of the Act are not put to such unworthy use.''

Justice Black dissented, and asserted that the majority opinion apparently gave the Act a liberal construction for the benefit of creditors rather than for the benefit of the soldiers, and that he feared the decision seriously limited the benefits Congress intended to provide in the Act.

Our own legislature, in chapter 7 of the Acts of the Extra Session of 1861 provided for continuances upon defendant's

motion when it appeared that he was in the actual military service of the United States, or of the state, and his presence was in any way necessary for a full and fair defense. In 1862 (chapter 109, Acts of the Ninth General Assembly) the Act of 1861 was repealed, and it was enacted that defendant need only show that he was in the service. And by chapter 19, Acts of the Tenth General Assembly (1864) the benefits of the Act were extended to plaintiffs as well as defendants. Clark v. Woodbury County, 23 Iowa 61. In passing upon the sufficiency of the showing for a continuance under the Act of 1861, in Lucas v. Casady, supra, 12 Iowa 567, 569, the court said:

"* * * and this court is disposed to give this section a liberal construction, as its design was to protect that class of our citizens who were ready to leave their homes and lay down their lives if necessary in this the hour of our country's peril."

In Bowsman v. Peterson, supra, 45 F. Supp. 741, 743, the court, after quoting part of section 524 of the 1940 Act, said:

"It is true that the language is permissive. But it is likewise obvious that it reflects an instructive legislative policy to place the person engaged in the military establishment beyond the effect of the urgencies and uncertainties of pending litigation, and to allow him a reasonable period * * * to reorient himself with a view to the trial of his cause. So, if a continuance is in order, there would seem to be a rather clear congressional intimation that in the ordinary case it should be granted in general terms for the duration of the applicant's service and three months thereafter. * * * The * * * Act of 1940 (in like manner with all similar previous acts in our history) was prompted by at least two considerations, first, the maintenance in the armed forces of a reasonable measure of that unbothered serenity and security in respect of personal responsibilities which effectively promotes military efficiency and the national defense; and secondly, the assurance that in the field of individual justice no advantage in judicial proceedings by or against a soldier or sailor will result from his absorption in his country's defense. The soldier or sailor in seasons of war has neither time nor mental aptitude for litigation. Without unnecessary dis-

cussion, it may simply be stated that while the Act recognizes that in some instances 'the ability of * * * the defendant to conduct his defense is not materially affected by reason of his military service', such instances will be relatively rare."

In Tulley v. Superior Court, 45 Cal. App. 2d 24, 30, 113 P. 2d 477, 480, the court said:

"Under that statute [Civil Relief Act of 1940], or independent of that statute, the trial courts possess ample powers to protect the rights of those in the military service of United States. It is inconceivable that, in a proper case, the trial court, upon a proper showing, would not grant a reasonable continuance to one engaged in military service to permit him to properly prepare his defense, and, if necessary, continue such case during the period of the defendant's foreign service."

In Craven v. Vought, 58 Montg. Co. Rep. 15, 16 (Pa. Com. Pleas), 4 Monroe Legal Rep. 11, 55 York Legal Rec. 173, the court, in granting the stay, said:

"We gather from the petition and the supporting depositions that the case arose out of an automobile accident, and that the defendant is the only witness in his own defense; that his counsel has not been able, because of his absence with the army, to consult with him in the preparation of the case, and that his present whereabouts is unknown. It is hard to imagine a more compelling case for invoking the aid of the statute, and it is therefore interesting to examine the reasons advanced for refusing its protection to the defendant. First and foremost, it appears from the depositions that the defendant carries liability insurance, and his counsel represents his insurance carrier. It is contended that the defendant has nothing to lose personally by the prosecution of the case in his absence. The Soldiers' and Sailors' Civil Relief Act of 1940 was not passed for the benefit of insurance companies; but there is nothing in this record to show what kind of a policy he has, or the extent . of the coverage. It is the defendant who petitions for the protection of the act and not the insurance company. Next, it is stated * * * the defendant * * * pleaded guilty to operating an automobile while under the influence of intoxicating liquor.

From this it is contended that the liability of the defendant is certain. There is nothing in the record to support this statement of counsel * * *. Even if liability were established or admitted, there is the further question of damages, and the amount of damages awarded by a jury in a case of this kind might well be affected by the presence or absence of the defendant. It is contended that the defendant could obtain a furlough and return home for the trial. * * * we are rather confident that furloughs cannot be obtained by just asking for them. * * * The plaintiffs undoubtedly suffer by not being able to prosecute their claims in the courts, but it is one of those sacrifices which we must make for the common good.''

What the Pennsylvania court said with respect to liability insurance and other matters applies fully and definitely to the case before us. We have stated above all that there is in the record about insurance. The sole fact in the record relating to the insurance carrier of appellant Williams is the name of the company. All else is purely speculative comment by appellee's chief counsel and by the trial court. There is nothing in the record about the amount of insurance, the terms of the policy, its coverage, the obligations of the insured or of his truck driver, if any, their co-operation with the insurer in investigating any claim or reaching any settlement or aiding in any litigation. The record is silent as to any rights of subrogation which Williams or his insurer might have against Oertwig. The court's repeated statement that Oertwig cannot be prejudiced or be injured has no evidential support.

Royster v. Lederle, 6 Cir., Mich., 128 F. 2d 197, 200, was a mandamus proceeding by the plaintiff praying that the Sixth Circuit Court of Appeals issue the writ ordering the respondent judge to vacate an order of continuance made pursuant to the Civil Relief Act of 1940, in a pretrial hearing in the action of Royster v. Ruggerio, 2 F. R. D. 429, in which plaintiff was seeking to recover damages in the sum of $10,000 suffered by her when struck by defendant's automobile. The injury was on June 12, 1941, and Ruggerio was inducted into the military service about June 28, 1941. Ruggerio had a liability policy of insurance under which he was saved harmless to the extent of $5,000 for

injuries to any one person, and a maximum of $10,000 for injuries and damages arising out of a single accident to persons and property, resulting from his operation of the automobile. At the time of the motion for continuance the petitioner offered to look solely to the insurer for the payment of any judgment she might obtain in the action if the court denied the motion. Ruggerio was found guilty of reckless driving and given a probated sentence. The court of appeals affirmed the ruling of the respondent judge, with the modification that the insurance carrier should execute a bond in the penal sum of $5,000 to the clerk of the court for the benefit of the plaintiff, conditioned on the payment of whatever judgment she obtained, not in excess of $5,000, in the event of the insolvency of Ruggerio.

The court said:

"The statute in question must be liberally construed to effectuate its purpose. We cannot say, as a matter of law, that Ruggiero's rights would not be affected by proceeding to the trial of the cause in his absence. The policy in question provides that the insured should cooperate with the insurer upon its request and should attend hearings and trials and assist in effecting a settlement if the insurer wished to compromise any claim and the contract of insurance further provides it shall be inoperative unless the insured complies with its terms.

"Admissions or statements under oath in another action are not conclusive of the facts stated therein, but are open to explanation or contradiction in a different action between different parties. Such statements or admissions may be considered by the jury, together with all the evidence presented, even though contradictory and such weight should be given to statements in other actions as they appear to be entitled to receive in view of all the circumstances attending the making of them. Under the above rule, on the trial of the civil action, Ruggiero could explain, amplify or contradict his statements made at the criminal trial and such evidence might influence the jury in its verdict. A party to an action should not be compelled to go to trial in his absence or in the absence of the only witness by whose testimony he can make out his defense, unless it appears that he has been guilty of negligence in failing to

attend the trial or procuring the attendance of the witness on whom he relies or in obtaining his testimony by deposition or otherwise. Ruggiero has not been guilty of any negligence in failing to attend the trial, and his insurance carrier likewise has not been guilty of negligence in failing to obtain his attendance at the trial or to take his deposition.''

Appellee herein brought action against the appellants jointly and prayed judgment against both of them. Judgment against Williams can be recovered only upon a finding that negligence of Oertwig proximately caused the death of Semler. Oertwig was a most important witness to Williams in making a defense. The motions for continuance were jointly made by both appellants and were based upon section 521 of the Civil Relief Act, although Williams was not in the military service. A somewhat similar situation arose in Butler, Keith & Co. v. McCall & Sypher, 15 Iowa 430, 433, in which the Soldiers' Relief Act of 1862 was construed. Action had been brought by the plaintiff to recover on a note given for merchandise sold to the defendants, who were sued not as individual members but as a partnership. A motion for continuance was filed by Sypher on behalf of the firm, on the ground that McCall was in the military service, and the motion was granted but judgment was entered for the amount admitted to be due. On defendants' appeal, the court, in reversing on the ground that a continuance for one was a continuance for both and that judgment could not be rendered for the amount admitted to be due, said:

''The question is raised, whether the defendant Sypher can claim any advantage of the right of McCall to a continuance. The suit is against Sypher and McCall as a firm, and not against them as individual members thereof. We are inclined to hold therefore, that a continuance as against one of said firm would operate as a continuance against both.''

In Lanham v. Cline, supra, 44 F. Supp. 897, 898, a joint action for damages was brought against Cline, the owner of an automobile which was being operated by Rothrock as the agent of Cline. Plaintiffs were injured by the negligent operation of the automobile by Rothrock, who was intoxicated at the time.

Two separate actions were brought by those injured. Rothrock filed petitions for a stay of proceedings under the Civil Relief Act of 1940, because, as stated in the affidavit of his mother, he was in the Army and stationed in California. The actions were stayed. In affirming, the court said:

"The allegations of the complaints present a joint action against the defendants and the plaintiffs cannot pretend to go to trial under the allegations of the complaints as to the defendant Cline alone."

See, also, Griswold v. Cady, 27 N. Y. S. 2d 302, in which the defendant husband was the operator of the car, and the only liability of the defendant wife was a joint liability with her husband by virtue of the joint ownership of the automobile. The husband was in the United States Navy. It was held that a stay of proceedings should be granted to both the husband and the wife under the Civil Relief Act of 1940.

In Hellberg v. Warner, supra, 319 Ill. App. 117, 135, 48 N. E. 2d 972, 979, action was brought against the surviving husband and two sons of the testatrix to obtain a joint judgment against them and the land devised to them, because of a superadded, statutory liability against the testatrix on certain bank stock she owned. One of the sons, who was an important witness for himself and his codefendants, was in the military service of the United States. The father, on behalf of all of the defendants, by petition set out the facts upon which a continuance was asked because the son Franz was in the service. It was granted as to all parties. In affirming the interlocutory order, the appellate court said:

"From an examination of the pleadings and the evidence * * * we think that the trial court might well have concluded that the soldier, in order to fully protect his interest in the property, should have the right to be present and take part in all of the proceedings. We feel that justice will best be served by sustaining the stay order in toto."

There are some decisions in which, largely because of the particular facts, a stay has been denied to the codefendants of the absent serviceman. We call attention to Laperouse v. Eagle

Indemnity Co., 202 La. 686, 691, 12 So. 2d 680, 682. A statute of Louisiana (Act No. 55 of 1930) permits the plaintiff who is injured by the negligence of the operator of an automobile to make the carrier of liability insurance upon the automobile a party defendant, against whom judgment may be taken. The plaintiff sued the indemnity Company, liability insurer of the Southwest Motors, Inc., and Wilson Landry, insured's employee, to recover judgment for damages suffered through the negligence and intoxication of the latter. Judgment in the amount of $18,654.50 was prayed. The insurance coverage was limited to $10,000 for injuries to any one person. In answer to interrogatories, Landry, in effect, admitted that his negligence caused plaintiff's injuries. Shortly before the trial Landry went into the military service. He asked a stay under the Relief Act, and the indemnity company joined therein. It was granted to both. The plaintiff proceeded, by various writs, to review the order. It was sustained with respect to Landry, since he would be liable for any recovery in excess of $10,000. The court said:

"While [he] might not be permitted to controvert the admissions made by him in his answers to the interrogatories, yet he certainly would be entitled to introduce any evidence that he might be able to procure touching the quantum of damages. * * * His defense in this respect might be materially affected by reason of his inability to be present at the trial of the cause during his military service."

But in view of the state statute above mentioned, and the conclusion of the court that the relief was intended only for the benefit of servicemen, it held that there should have been no stay for the indemnity company. The decision of the Federal Court in Lanham v. Cline, supra, 44 F. Supp. 897, was distinguished because in the latter case there was no statute such as Act 55 of 1930 involved.

See, also, concurring opinion by McFaddin, J., in Glick Cleaning & Laundry Co. v. Wade, supra, Ark., 172 S. W. 2d 929, stating that the laundry company was not entitled to claim the benefits of the Act, under its section 524. However, in that

case there was neither a joint nor a joint-and-several relation between the serviceman and the laundry company. The latter was not the real party in interest.

The case of Swiderski v. Moodenbaugh, 44 F. Supp. 687, in which a later opinion, in the nature of an opinion on rehearing, appears in 45 F. Supp. 790, was an action to recover damages against the owner of an automobile who was absent in the military service. He carried liability insurance. The court being in the Ninth Circuit Court of Appeals and not bound by a decision of the Sixth Circuit, refused to follow the decision or the reasoning in Royster v. Lederle, supra, 6 Cir., Mich., 128 F. 2d 197. Certain facts give support to the result reached in the decision in the Swiderski case, but the decision in the Royster case appears to us to be the sounder law and more in keeping with the spirit and purpose of the Civil Relief Act. This is particularly true with respect to Oertwig. He was expressly within the purview of the Act. The fact that he was an important witness for himself, and, necessarily, for his codefendant, in a joint action in which the alleged negligence on his part was essential to a judgment against either defendant, was a matter of weighty consideration in support of their joint motions. And the fact that Oertwig was a party and entitled to be present to aid in selecting the jury, and throughout the trial to advise with his lawyer, and to be observed by the jury, was another compelling consideration. This was the holding in Korsch v. Lambing, 28 N. Y. S. 2d 167. The circumstances would be much out of the ordinary, in a damages action of this kind, if a defendant's case could be properly and effectively tried in his absence. We have commented on this valued right a number of times, and have held its denial to be reversible error. See In re Estate of Townsend v. Townsend, 122 Iowa 246, 249, 97 N. W. 1108, and In re Estate of Rogers, 226 Iowa 183–188, 283 N. W. 906.

The statute being an Act of Congress, we will be guided by the decisions of the highest federal courts in their interpretations of its various provisions. It is our conclusion that these decisions and the preponderant weight of the decisions of the state courts are against the grounds urged by the appellee, and held by the court, for the denial of the continuance, because of

the claimed insurance protection, and do not just ify the ruling of the court as against either appellant.

In some of the cases cited herein, it appears to have been the thought of the court that the discretion of the trial court was quite restricted in passing upon motions for continuance based upon the Act. There has also been some doubt indicated as to who had the burden of establishing that the absent serviceman would be prejudiced by denying his motion for a continuance. These questions have been answered in Boone v. Lightner, supra, 319 U. S. 561, 569, 63 S. Ct. 1223, 1228, 87 L. Ed. 1587, wherein it is held that the Act is not rigid and inelastic, but reposes in the trial court a sound judicial discretion in doing justice between the parties. After commenting upon the fact that the Act makes no express provision as to who must carry the burden of establishing prejudice, the court said:

"We, too, refrain from declaring any rigid doctrine of burden of proof in this matter, believing that courts called upon to use discretion will usually have enough sound sense to know from what direction their information should be expected to come."

For annotations of decisions of the Civil Relief Act of 1940, and of similar earlier legislation, see 146 A. L. R. 1480, and earlier American Law Reports noted therein.

 Neither does the ruling have support in the contention of the appellee and of the court that the use of the transcript of Oertwig's testimony in the first trial eliminated any prejudice or injustice to the appellants because of Oertwig's absence. Had this testimony been admitted as fully as it was received in the first trial, as the comments of appellee's counsel and of the court clearly indicated it would be during the submission of the motions, there would be some, though insufficient, basis for the contention. But that is not what happened. Throughout the reading of the transcript of Oertwig's testimony persistent objections of various kinds were made by appellee's counsel. Almost without exception they were sustained. On one occasion material testimony was stricken by the court without objection. Many of the objections were to the form of the question only—that the question was leading, suggestive, or called for a conclusion. The

transcript was in the nature of a deposition. It is common practice among lawyers, in taking depositions, that objections to the form of the question, if not made, are waived. The appellants suggested to the court that, had the objection been made when the witness was testifying, the question could have been reformed and the objection nullified. The court said: "That is unfortunate. I can't help that now * * *." The part of the answer which was refused at this time was as follows:

"The windshield wiper come up like this [indicating], it would leave a little streak behind it and the windshield in meeting automobiles, the filth from the road, mud, splattered water, splattered on the windshield, why, it had a tendency to drag, and I come up to the top of the hill, and just when I come over the top of the hill, you couldn't hardly see the black line so I dropped my lights just at the brink of the hill before the accident. * * * It is a low light and gives a lot better vision on wet pavement."

The testimony was competent, material, and relevant, particularly as bearing upon the allegation that Oertwig had not kept a proper lookout. Many times the objection was made and sustained that the answer was not responsive, when the objection was not available to the appellee, and the record showed it was responsive. A careful examination of the testimony excluded satisfies us that it could not have unfairly prejudiced the appellee. The only part of the cross-examination read by appellee was to the effect that the witness had guessed at some of the statements which he made in his report to the sheriff. An important factor in the case was whether the taillight of the coupé was lighted. The witness had testified that he saw no taillight. On redirect examination the witness was asked these questions: "You are willing to absolutely swear that you know there was no taillight burning? You know there was no taillight?" The objection was that the questions were leading, suggestive, and repetition. The court said: "Yes I think he has answered it several times." The record does not sustain the court. The answers excluded were: "I will swear there was no taillight burning. Absolutely. If there was I would have seen it."

It is quite generally held that the granting or refusal of

a motion for continuance is discretionary with a court, but this presupposes the exercise of a sound judicial discretion, to the end that, so far as possible, injustice will be done to no party. This is particularly true where a refusal to grant the stay prevents the personal participation of a party in the trial and, in substance, denies him his day in court. The expressed purpose of this Act, and the construction put upon it by both state and federal courts, make it clear that, in refusing a stay, a court should be very certain that its decision, in the individual case, is not defeating the purpose of the Act. It is some evidence that the refusal of the stay was prejudicial to Oertwig and his co-appellant and materially affected their rights, when the fact appears that a jury found for them when Oertwig testified in person and another jury found against them when it heard his testimony, mutilated by exclusions, read to them. The supplementary ground of the motion because of remarks of appellee's counsel in the presence of members of the jury panel that the insurance carrier was a real defendant was an additional reason why the motion for continuance should have been granted. In Bowsman v. Peterson, supra, 45 F. Supp. 741, 742, the court said:

"Within due limitations, he [a party] ought to be allowed to testify personally before the jury rather than through the notoriously indifferent medium of a deposition."

It is our judgment that the court clearly abused its discretion in refusing to grant the motions. We therefore hold that the motions of the appellants should have been granted as to each appellant until such time as the military service of appellant Oertwig does not materially affect the defense of the appellants.

■ II. Appellants assigned error because of the giving by the court, on its own motion, of Instructions Nos. 5, 8, and 11, in which the jury was told that the court had determined, as a matter of law, that Oertwig was guilty of one or more of the grounds of negligence submitted, and that the jury should accept this determination of the court as the establishment of these acts of negligence by the appellee. The giving of these instructions

was clearly error, because, under the record, each of three allegations of negligence submitted to the jury raised an issue of fact for its determination. The only evidence that Oertwig did not have his truck under control and that he was not keeping a proper lookout is the fact that he did not see the coupé until he was almost upon it and collided with it. There is evidence that he was keeping a lookout, and that as he came over the top of the hill to the east he adjusted his lights to a lower beam to give him better vision on the pavement ahead, and that he kept his wiper operating to clear the windshield from moisture and splatterings. In determining the reason for the collision, the testimony that the taillight of the coupé was not lighted, and that it may have been stopped on the pavement, were proper matters for the consideration of the jury. These matters were also particularly material and important in their bearing upon Oertwig's alleged failure to bring his truck to a stop within the assured clear distance ahead. As pointed out by Justice Garfield in Central States Electric Co. v. McVay, 232 Iowa 469, 470, 5 N. W. 2d 817, 819, the Forty-sixth General Assembly, by chapter 49 of its Acts, apparently had a definite purpose in adding to the first paragraph of what is now section 5023.01 of the 1939 Code the words: " 'such driver having the right to assume, however, that all persons using said highway will observe the law.' " While it is a general rule that one may assume that others will obey the law, this court, in Lindquist v. Thierman, 216 Iowa 170, 179, 248 N. W. 504, 508, 87 A. L. R. 893, had said that, insofar as the assured-clear-distance-ahead statute "refers to the lights of automobiles in the nighttime, the rule that a driver of a car can assume that others on the highway will obey the law is slightly, if at all, material." The same thought was expressed in Gookin v. Baker & Son, 224 Iowa 967, 973, 974, 276 N. W. 418. Therefore, appellee's contention that, "There is no reason now for construing the assured clear distance ahead statute any differently than under the law prior to July 4, 1935" (the date the amendment became effective) is without merit. Under the evidence and under the decisions in the McVay case, supra, and in Uhlenhopp v. Steege, 233 Iowa 368, 7 N. W. 2d 195, and Harrington v. Fortman, 233 Iowa 92, 8 N. W. 2d 713, the issue respecting the violation of this statute was for the jury.

■ III. Appellants assign error because in Instruction No. 12 the court told the jury that if it found the coupé was being driven without the taillight being lighted, "such fact alone would not constitute negligence on the part of the said Jesse Semler" unless he failed to use ordinary care in this respect. We have repeatedly held that the failure to comply with the statutory provisions requiring taillights on automobiles is negligence per se unless the one who so fails shows a legal excuse for such failure. Kisling v. Thierman, 214 Iowa 911, 915, 243 N. W. 552; Kneppe v. Huismann, 223 Iowa 569, 571, 272 N. W. 602; Schwind v. Gibson, 220 Iowa 377, 380, 260 N. W. 853. The jury should have been so instructed. The instruction given was prejudicial error.

The judgment is reversed and the cause is remanded for entry of judgment in conformity herewith.—Reversed and remanded.

HALE, OLIVER, GARFIELD, MANTZ, and WENNERSTRUM, JJ., concur.

MULRONEY, C. J., and SMITH and MILLER, JJ., concur in the result.