MARTIN *v.* ROLFE.

4-7492                                                    184 S. W. 2d 70

Opinion delivered December 18, 1944.

*Giles Dearing,* for appellant.

*J. L. Shaver,* for appellee.

HOLT, J. N. B. Martin died testate April 10, 1928, and left as his sole survivors, his widow, Florence B. Martin, and a son, Norman Bowles Martin, two of the appellants here. By his will, N. B. Martin directed that his estate be distributed according to the laws of the State of Arkansas. At the time of his death, N. B. Martin owned all but two or three shares of the East Arkansas Abstract & Loan Company, and was actively operating the corporation. There has been no administration of his estate.

Following the death of N. B. Martin, his widow, Florence B. Martin, continued to operate the abstract company until some time in 1943, shortly before the present suit was filed. Practically all of the proceeds from the operation she converted to her own use.

January 10, 1930, the East Arkansas Abstract & Loan Company, by appropriate action of its board of directors, duly authorized appellant, Florence B. Martin, secretary of the company, to procure a loan of $4,400 from the Cross County Bank, to sign the company's note therefor, and to execute a chattel mortgage upon all of the property of the company as security to the bank for the loan. Following the instructions of the abstract company, Florence B. Martin executed the note and mortgage, and secured the loan January 10, 1930.

September 7, 1931, Florence B. Martin executed a bill of sale to F. D. Rolfe, appellee, which contained the following provisions: "That I, Florence B. Martin of Wynne, Cross county, Arkansas, for and in consideration of the sum of one and no-100 dollars to me in hand paid by F. D. Rolfe ~~and R. A. Martin~~ & the assumption by F. D. Rolfe ~~and R. A. Martin~~ of $2,500 due Cross Co. Bank & $2,500 due R. A. Martin at and before the sealing and delivery of these presents (the receipt whereof is hereby

acknowledged) have bargained, sold and delivered, and by these presents do bargain, sell and deliver unto the said F. D. Rolfe and R. A. Martin the following: All the right, title and interest in and to the abstract business of the East Arkansas Abstract & Loan Company, the control of which is vested in the said Florence B. Martin, and is to include the following: All abstract books, plats, files and all forms and stationery used in connection with conduct of the East Arkansas Abstract & Loan Co.: * * * To have and to hold the said goods unto the said F. D. Rolfe and R. A. Martin, their executors, administrators and assigns, to them and their own proper use and benefit forever, and I, the said Florence B. Martin, for me and my heirs, executors and administrators, will forever warrant and defend the said bargained premises unto the said F. D. Rolfe and R. A. Martin and their executors, administrators and assigns from and against all persons whomsoever. * * * (Signed) Florence B. Martin.''

Appellant, Lena Martin, is the widow of R. A. Martin. N. B. and R. A. Martin were brothers, and their mother, Nellie P. Martin, married appellee, and there was one child born to this union, Elliott A. Rolfe.

The property mentioned in the bill of sale remained in the possession of Florence B. Martin, who, as indicated, continued to operate the abstract company. The charter of the abstract company was revoked by the State in 1934. June 29, 1935, appellee, Rolfe, paid the Cross County Bank the balance due it on the note, *supra,* in the amount of $2,925.

It appears that the bill of sale was made to F. D. Rolfe and R. A. Martin (husband of appellant, Lena Martin), but the name of R. A. Martin has been marked out, leaving the property granted to F. D. Rolfe alone. The consideration recited is $1 and the assumption of $2,500 due to the Cross County Bank and $2,500 due R. A. Martin, but here the name of R. A. Martin is not marked out. Wherever the name R. A. Martin appears in the remainder of the bill of sale, it has been marked out.

June 28, 1943, Mr. Rolfe filed this suit in which he alleged that under the terms of the bill of sale he became the sole owner of the assets of the abstract company and he did not agree to assume the payment of $2,500 to R. A. Martin, and that it was his understanding that the bill of sale was made direct to him alone.

He sought first to have the bill of sale reformed and that he be declared the sole owner of the abstract company, or in the alternative that he be subrogated to the rights of the Cross County Bank in the note and mortgage, *supra*.

Appellants, Florence B. and Lena Martin, answered with a general denial, and in addition, alleged that Florence B. Martin only agreed to sell to Rolfe "all the right, title and interest in the abstract business which was under her control"; that if in fact appellee paid the bank the debt of the abstract company evidenced by the note and mortgage dated January 10, 1930, he did so as a volunteer, without their knowledge or consent; that he had no right to be subrogated to any rights the bank may have had and specifically pleaded the statute of limitations as a bar to appellee's suit.

Appellant, Norman Bowles Martin, was a member of the Armed Forces of the United States at the time the present suit was filed and service of summons was had upon him while he was home on furlough. He filed a pleading in the cause alleging that he "is the real party in interest in said action." . . . That he "is now in the service of the United States Army, being stationed at camp. Under the Soldiers' and Sailors' Relief Act the said defendant cannot be compelled to respond to this action at this time, wherefore your petitioner prays that the said cause be dismissed or continued for such time as the said defendant may be retained in said military service."

Upon a trial, the trial court found that appellee's, Rolfe's, complaint should be dismissed in so far as he "is claiming to be the owner of said books, but the said F. D. Rolfe should be subrogated to the lien of the mort-

gage executed by the East Arkansas Abstract & Loan Company to the Cross County Bank to secure the indebtedness that the said F. D. Rolfe paid to the Cross County Bank, and that he should have a first lien on said books for the sum of $2,925, together with 8 per cent. interest from June 29, 1935. . . . That Norman Bowles Martin was duly served with personal process in this cause on July 15, 1943, and has filed no answer herein; that the motion of Norman Bowles Martin to continue this case or dismiss same on account of being in the Armed Forces of the United States should be denied on account of the fact that the said Norman Bowles Martin has had ample time within which to make any defense that he might have herein, but he has not seen fit to file any answer or other pleadings, other than said motion.''

The cause comes here on direct and cross-appeal. Appellee has appealed from that part of the decree finding that he was not the sole owner of the abstract company in question.

On the death of N. B. Martin, April 10, 1928, he was the sole owner of the capital stock of the East Arkansas Abstract & Loan Company with the exception of two or three shares. Upon his death, his stock descended one-third to his wife, Florence B. Martin, and two-thirds to his son, Norman Bowles Martin. After his death, Florence B. Martin continued to operate the company and enjoy its proceeds. There was no administration of N. B. Martin's estate.

From the record here, the loan of $4,400 from the Cross County Bank which the abstract company procured January 10, 1930, was in all things regular and the note and mortgage evidencing same were binding obligations of the company. The bill of sale, however, in which appellant, Florence B. Martin, attempted to sell all the assets of the abstract company to appellee, Rolfe, was executed without authority from the abstract company and shows on its face that it was effective to convey no more than the personal interest of Florence B. Martin in the abstract company. The preponderance of the evi-

dence does show, however, that appellee, Rolfe, in good faith thought that he was buying all the assets of the company and that the bill of sale, as first prepared and presented to him had been in accordance with his directions changed so as to eliminate any reference to R. A. Martin. In this belief, appellee paid the abstract company's debt to the bank, and in doing so, we think he was entitled to be subrogated to the rights of the bank and that he was in no sense a volunteer.

Appellee was a stepfather, was kind to the Martin children, was most generous to them, and after the death of his wife in 1936, he gave to these children, including his son, Elliott Rolfe, and appellant, Norman Bowles Martin, most of the land that he had acquired over many years. His purpose in procuring the bill of sale to the property of the abstract company was largely to assist Florence B. Martin in supporting herself, and to keep the property within the family.

"The doctrine of subrogation was evolved by courts of equity for the prevention of injustice, it is administered not as a legal right, but the principle is applied to subserve the ends of justice, and to do equity in the particular case before the court. Therefore, no rule can be laid down for its universal application, and whether it is applicable or not depends upon the particular facts and circumstances of each case as it arises, and is subject to that most ancient maxim, 'he who seeks equity must do equity.' " (*Federal Land Bank of St. Louis* v. *Richland Farming Company*, 180 Ark. 442, 21 S. W. 2d 954.)

We think the rule, announced in *Wyman* v. *Johnson*, 68 Ark. 369, 59 S. W. 250, applies here. There, quoting Headnote 2, this court held: "Where trustees appointed by will to control and manage the testator's property until the devisees should come of age undertook to mortgage the fee in the same, the mortgage is ineffectual to convey the interest of the devisees, but the mortgagee therein will be subrogated to the lien of a prior mortgage executed by the testator and discharged by the trus-

tees out of funds provided by means of the **second** mortgage."

We cannot agree with appellants' contention that appellee's right of action was barred by the statute of limitation (§ 8933, Pope's Digest). On the testimony presented, appellee first learned that his title to the books and property of the abstract company was being questioned some time in 1943 when Florence B. Martin ceased to operate the abstract company's business and accepted other employment. In these circumstances appellee would have a reasonable time within which to assert his right to subrogation. This was the effect of the holding of this court in *Neff* v. *Elder*, 84 Ark. 277, 105 S. W. 260, 120 Am. St. Rep. 67 (Headnote 9) : "A purchaser of a defective title to land who was entitled to subrogation by reason of having discharged a valid mortgage lien which was not barred at the time of such discharge may bring his action to enforce his right to subrogation within a reasonable time after discovery of the defect in his title."

Nor do we think that error has been shown in the action of the trial court in overruling appellant Norman Bowles Martin's motion for dismissal or continuance as to him under the provisions of the Soldier's and Sailors' Civil Relief Act of 1940, Tit. 50, U.S.C.A. App., § 501, *et seq.* He made no attempt to show in what manner his rights or interests would be prejudiced. He was content to file a motion to dismiss or continue on the ground that he was the principal party in interest and was in the service of the Army in camp at the time. In these circumstances, it was within the sound discretion of the trial court to determine whether the cause should proceed against Norman Bowles Martin. We so held in the recent case of *Glick Cleaning & Laundry Co.* v. *Wade, Administrator*, 206 Ark. 8, 172 S. W. 2d 929, wherein we followed the decision of the Supreme Court of the United States in *Boone* v. *Lightner, et al.*, 319 U. S. 561, 63 S. Ct. 1223, 87 L. Ed. 1587.

We hold, however, that this appellant has the right, and we preserve to him that right, to have the decree, in

.so far as it affects his interests, opened up after the termination of his military service upon proper application and showing under § 520, Sub. Div. 4 of the Soldiers' and Sailors' Civil Relief Act, *supra*. That section is as follows: "(4) If any judgment shall be rendered in any action or proceeding governed by this section against any person in military service during the period of such service or within thirty days thereafter, and it appears that such person was prejudiced by reason of his military service in making his defense thereto, such judgment may, upon application, made by such person or his legal representative, not later than ninety days after the termination of such service, be opened by the court rendering the same and such defendant or his legal representative let in to defend; provided it is made to appear that the defendant has a meritorious or legal defense to the action or some part thereof. Vacating, setting aside, or reversing any judgment because of any of the provisions of this act shall not impair any right or title acquired by any *bona fide* purchaser for value under such judgment. Oct. 17, 1940, c. 888, § 200, 54 Stat. 1180." In addition, we preserve to this appellant the right, if he so elect after his discharge, to except to the sale of the books and property of the abstract company.

As so modified, the decree is affirmed.